UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D. G. Sweigert, | PRO SE |
| -against- | 23-cv-05875-JGK-VF |
| Jason Goodman, | Judge John G. Koeltl |
| | Related Case: 23-cv-06881-JGK-VF |

[CORRECTED]
PLAINTIFF'S AMENDED [REPLACES ECF 130]
MOTION FOR TEMPORARY AND PERMANENT INJUNCTION
AGAINST THE DEFENDANT PURSUANT TO SECTION 1127
OF THE LANHAM ACT

NOW COMES THE PRO SE PLAINTIFF to seek a temporary injunction to restrain Defendant Jason Goodman's continual social media broadcasts that the Plaintiff is a criminal, has violated criminal statues, has filed forged documents in sister courts, etc.

Signed April 22, 2024 (4/22/2024)

**D. G. SWEIGERT PRO SE PLAINTIFF, C/O
PMB 13339, 514 Americas Way,
Box Elder, SD 57719**

### CERTIFICATE OF SERVICE

Copy of this pleading has been placed in the U.S. MAIL addressed to Jason Goodman, 252 7th Avenue, New York, N.Y. 10001 on April 14, 2024 (4/22/2024). Signed April 22, 2024 (4/22/2024)

**D. G. SWEIGERT PRO SE PLAINTIFF, C/O PMB 13339,
514 Americas Way, Box Elder, SD 57719**

1

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................................3

**INTRODUCTION** .....................................................................................................................6

**LAW AND ARGUMENT** .......................................................................................................13

**RELIEF REQUESTED** ..........................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Ansonia Assocs. Ltd. P'ship v. Ansonia Tenants' Coal., Inc.,* 677 N.Y.S.2d 575, 576 (N.Y. App. Div. 1998) ................................................................................................................. 14

*Berken v. Jude,* No. 12-CV-02555-RPM, 2013 WL 6152347, at *2 (D. Colo. Nov. 22, 2013) ... 15

*Bingham v. Struve*, 591 N.Y.S.2d 156, 158 (N.Y. App. Div. 1992) .............................................. 14

*Camel Hair Mfrs. v. Saks*, 284 F.3d 302 (1st Cir. 2002) .............................................................. 13

*Eugene Volokh, Anti-Libel Injunctions*, 168 U. Pa. L. Rev. 73, 141 (2019) (citations omitted) ... 14

*Goodman v. Bouzy* ......................................................................................................................... 7

*Goodman v. Bouzy*, 21 Civ. 10878 (AT) (JLC) (S.D.N.Y. Feb. 21, 2024) .................................... 7

*Goodman v. The City of New York*, 23-CV-9648 (JGLC) ............................................................. 7

*Johnson & Johnson v. Carter-Wallace, Inc.,* 631 F.2d 186, 190 (2d Cir. 1980) ......................... 16

*Khalil v. Fox Corp.*, 21 Civ. 10248 (LLS) (S.D.N.Y. Aug. 16, 2022) ......................................... 12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392, 24 Fla. L. Weekly Supp. 623 (2014) .......................................................................... 12

*Lothschuetz v. Carpenter*, 898 F.2d 1200, 1208-09 (6th Cir. 1990) ........................................... 14

*McNeilab, Inc. v. American Home Prods. Corp.,* 501 F.Supp. 517, 529 (S.D.N.Y. 1980) ( ........ 11

*N. Am. Olive Oil Ass'n* , 962 F.Supp.2d at 524 ............................................................................ 14

*N. Am. Olive Oil Assocation v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013) ....... 13

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578, 586-87 (3d Cir. 2002) ...................................................................................................... 12

*Osmose, Inc. v. Viance, LLC* , 612 F.3d 1298, 1321 (11th Cir.2010) ........................................... 15

*Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1333 (8th Cir. 1997) ................................... 13

*Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*, 926 F.2d 134, 140 (2d Cir. 1991) ................................................................................................................... 11

*Rombom v. Weberman,* 2002 WL 1461890 (Sup.Ct. Kings Co. June 13, 2002), aff'd, 766 N.Y.S.2d 88 (2d Dept. 2003) at *13 ................................................................................... 14

*Tiffany (NJ) Inc. v. eBay, Inc.*, No. 04-cv-4607 (RJS), 2010 WL 3733894, at *3 (S.D.N.Y. Sept. 13, 2010) ........................................................................................................................... 13

*Time Warner Cable*, 497 F.3d at 153 ............................................................................................ 12

*Time Warner Cable*, 497 F.3d at 158 ............................................................................................ 13

*Time Warner Cable, Inc. v. DIRECTV, Inc.,* No. 07-0468-cv, 2007 WL 2263932 (2d Cir. Aug. 9, 2007) ................................................................................................................................. 12

*U-Haul Int'l Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986) ........................................ 13

**Statutes**

§ 1125(a)(1)(B) ................................................................................................................................ 5

15 U.S.C. § 1125(a) .................................................................................................................. 5, 12

15 U.S.C. § 1127 ...................................................................................................................... 5, 12

Lanham Act .............................................................................................................................. 5, 12

**Treatises**

Certified Ethical Hacker Field Operations Guide: In-depth technical how to for passing the CEH exam (CEH FOG series), https://www.amazon.com/Certified-Ethical-Hacker-Operations-depth/dp/1530111722 ........................................................................................................... 10

**[CORRECTED]**
**MEMORANDUM OF LAW TO SUPPORT**
**PLAINTIFF'S AMENDED MOTION FOR TEMPORARY AND PERMANENT INJUNCTION AGAINST THE DEFENDANT PURSUANT TO SECTION 1127 OF THE LANHAM ACT**

There is an accompanying EXHIBITS ANNEX and DECLARATION filed concurrently with this pleading.

### INTRODUCTION

1.  The Lanham Act *pro se* Plaintiff submits this request for a temporary and permanent injunction pursuant to 15 U.S.C. § 1127 and 15 U.S.C. § 1125(a) following the escalation of Defendant's disinformation campaign as enshrined in video content published by the Defendant and an Alex Jones type Internet personality on April 14, 2024. Such content is a public solicitation for an economic exchange by Goodman and is advertising in the context of the Lanham Act, consequently the for-profit disinformation campaigns that attract paying customers are an instantiation of false advertising and deception (false advertising, § 1125(a)(1)(B)).

2.  For the purposes of 15 U.S.C. § 1127 and 15 U.S.C. § 1125(a) (herein collectively "the Lanham Act") Goodman and his former roommate and co-anchor George Webb Sweigert ("Webb") are direct competitor rivals that label themselves as "investigative journalists", although both place into interstate telecommunications platforms extremist conspiracy theories and disinformation. Both distribute video livestreams, podcasts, blog posts and maintain websites. For example, on the Twitter platform Webb operates @RealGeorgeWebb1 while Goodman operates @JG_CSTT (which displays the trademark "Crowdsource The Truth") and @GHenryDickface (a parody of the Plaintiff's WW II combat veteran father).

3.    As the Court is familiar, Goodman receives income for his pay-per-view (PPV) podcasts on the PATREON.com pay-wall (where Goodman claims to operate a "truth engine"[1]), as well as on Odysee.com, SubScribeStar.com, SubStack.com, etc. These PPV sites offer no public viewing capability which necessitates the use of public channels (Twitter, YouTube, etc.) to entice consumers to visit them. These PPV channels can be likened to an adult entertainment strip club that requires a membership for entrance, although openly advertised to the public on billboards.

4.    Goodman openly states that his public presence (e.g. Twitter tweets and YouTube.com podcasts) on such advertising vehicles is needed to draw in new subscribers to his PPV PATREON.com channel and other private for-profit channels (SubStack.com, Odysee.com[2], etc.)[3].

---

[1] "About Crowdsource The Truth
Crowdsource The Truth is an Open Source Fact Checking "Truth Engine" and political social media movement. We gather and disseminate raw intelligence and present it to our constantly expanding network of human brains for vetting, analysis and assessment. Crowdsource the Truth focuses on examining current events, public policy, history, truth in media and other topics of interest. Members work together to collect and analyze data from around the web and around the world. Together, we will do our best to determine what is fact and what is fiction. Everyone is invited to participate but of course no one is required to. If you see something you disagree with, challenge it with stronger evidence and logic or simply tune it out. This group is an Autocratic Democracy, to borrow some Orwellian doublespeak from those I wish to examine. I run it, but of course if the group dislikes my decisions the project will fail. All decisions will be subjected to group consensus. If anyone doesn't like the direction, please suggest a change or feel free to bow out." Case 1:23-cv-05875-JGK Document 13 Filed 09/23/23 Page 41 of 81

[2] To be clear, Goodman can release public video content and Odysee which advertises private content on Odysee.

[3] Each Crowdsource The Truth video contains this solicitation in the description of the video: *Sponsor Crowdsource the Truth & enjoy exclusive content on SubscribeStar, Odysee, Substack & Patreon http://www.subscribestar.com/crowdsou... https://odysee.com/@Crowdsourcethetruth https://crowdsourcethetruth.substack....* [Exh. B]

5.      Each and every public video distributed by Goodman contains the Crowdsource The Truth™ business trademark and numerous verbal solicitations and ticker banners directing the general public to engage in consumer economic activity at the PPV sites [Exh. B] (with Internet PPV links in the video description box as well).  This video content is also promoted by Goodman as Twitter tweets, which also include the Crowdsource The Truth business trademark, that provide links to public videos.  It is all a game of finding new "suckers" or "subscribers".

6.      Both Webb and Goodman, and now John Cullen, profit by accusing each other of pushing lies, falsehoods and misinformation (collectively known as "disinformation") in their respective social media productions.  Both accuse each other on public social media channels of criminal activity and both profit from their disinformation campaigns by seeking consumers to engage in PPV Internet video web sites.

7.      In the most recent example, Goodman publicly advertises his manifesto, called "The Twitter Coup" [Exh. A], to promote his PPV video podcasts (where consumer economic activity occurs).  In this regard, Goodman has sued the N.Y.P.D. the City of New York and Twitter concerning their supposed interference in the transfer of his manifesto to Elon Musk (also a defendant), owner of Twitter.  *Goodman v. The City of New York*, 23-CV-9648 (JGLC)

8.      In that action Goodman asserts that Webb, the Plaintiff, the President/CEO of the Television EMMY Awards (Adam Sharp, also a defendant) and U.S. District Judge Valerie E. Caproni have plotted to deny Goodman "his constitutional rights" by working covertly in a criminal conspiracy to interfere with the transfer of Goodman's "Twitter Coup" papers to Mr. Musk, which amounts to a criminal conspiracy in Goodman's eyes.  The "Twitter Coup" narrative has already been debunked in the action known as *Goodman v. Bouzy*, 21 Civ. 10878 (AT) (JLC) (S.D.N.Y. Feb. 21, 2024).

9. In *Goodman v. Bouzy*, Goodman sued Webb, the Plaintiff, Adam Sharp (again) and the attorneys representing Mr. Sharp. The action was dismissed with prejudice to include a broad pre-filing injunctive order[4] to enjoin Goodman from suing Mr. Sharp again without prior court approval[5]. Exhibit A contains Goodman's recent Tweets directed at Adam Sharp (handle @AdamS) who is labeled as a criminal[6] by Goodman and linked to the Plaintiff (untrue) in a criminal conspiracy.

10. Goodman and his Webb co-anchor replacement, Internet personality John Cullen, widely published public video content on April 14, 2024 (simultaneously in a "livestream" on channels controlled by Cullen and Goodman). The content (targeting "criminal co-conspirators" Webb, Sharp, Caproni, and Plaintiff) provides an instructive look into Goodman's deceptive public solicitations for economic exchange (false advertising). Several verbal solicitations are made to the public to become consumers of private PPV channels in the video, while website addresses flash on the screen in telethon-like fashion, to entice consumers to view more scurrilous and salacious slander behind the protection of a pay-wall. [Exh. B]

11. In these public productions, with no factual basis to make such a claim other than the two are brothers, Goodman continually identifies the Plaintiff as a colleague, co-worker, criminal co-conspirator, partner, surrogate and/or proxy working and collaborating with Webb and Webb's social media business. Thus, for the purpose of the Lanham Act, Goodman's confabulation of

---

[4] *Goodman v. Bouzy*, 21 Civ. 10878 (AT) (JLC) (S.D.N.Y. Feb. 21, 2024)
[5] "that the Court (1) grant the motion of the Academy, Sharp, and Esquenet (the "ATAS Defendants") at ECF No. 241 to amend the judgment entered in this case to include a filing injunction prohibiting Goodman from filing any additional suits or claims against them without first obtaining leave of court;" *Goodman v. Bouzy*
[6] "@AdamS is a criminal based on the evidence I have seen and I will see to it that he is brought to justice. With luck, one day, he will watch his young daughter's wedding on prison CCTV, if the warden is feeling generous.." Exhibit A.

the two brothers represents a rival competing enterprise in Goodman's mind. His intent is to discredit, injure and harm such a rival. To this end, Goodman is acting substantially out of economic motivation when making such deceptive (zero-fact) statements to disparage his rival competitors, which have injured the commercial reputation and goodwill of the Plaintiff.

12. Goodman promotes the falsehood that the Plaintiff is an employee of the U.S. National Institute of Health (N.I.H.) tasked to destroy Goodman's "business" [Exh. C] (untrue) because of Goodman's reporting of the COVID-19 pandemic (untrue). Plaintiff has never had any connection with the N.I.H. as explained in the accompanying declaration. This truth has not stopped Goodman from pushing his deception on duped consumers, some of whom may feel a sense of patriotic duty to fund Goodman's self-proclaimed efforts to halt government censorship by the N.I.H.

13. Other facets of Goodman's zero-fact disinformation campaign include implicating Webb's father in a Nazi conspiracy known as "Operation Paperclip" [Exh. E], which implies his competitors' father was a war criminal, although George H. Sweigert (patent holder for the invention of the cordless phone) served in the U.S. Army 37th Division during World War II in the South Pacific (Guadalcanal, Fiji Islands, Bougainville, Liberation of the Philippines, etc.)[7]. Again, a zero-fact statement.

---

[7] Crowdsource The Truth
@JG_CSTT
"Mentally ill serial child abuser George Henry Sweigert is suspected of being a beneficiary of the now declassified #OperationPaperclip which integrated #Nazi war criminals into American society, academia and government.

This would explain why he and his family never got to reap the financial benefits of the full duplex radio telephone he invented. That patent is at the heart of every modern cell phone. Why is his equally mentally ill son, one of the most litigious psychopaths to ever walk the earth, not suing every company being enriched by this allegedly stolen patent?

14. Likewise, Goodman has proclaimed that both Webb and the Plaintiff are wife swappers and share spouses (untrue) [Exh. F] as Stasi Nazi intelligence operatives[8]. Goodman has declared that the Plaintiff is a criminal, as is Webb, for various crimes, including the planning of the Port of Charleston, S.C. June 14, 2017 dirty bomb hoax (untrue) [Exh. G].

15. Goodman widely disseminates statements that the Plaintiff assisted in the creation of forged court documents (as the Plaintiff authored a computer networking technical manual[9]) and used his technical abilities to create a PDF document "forgery" (untrue) in a Detroit, Michigan federal court (untrue). Said technical manual does not even contain the words "PDF" and certainly does not describe how to create a forged PDF document (see accompanying declaration).

16. Goodman's disinformation campaigns are intentional and designed to entice the general public to his PPV podcasts that Goodman promises will reveal more details of these horrendous crimes (hacking, Nazi membership [Exh. D], wife swapping [Exh. F], Port of Charleston [Exh. G], illegal covert government operations and other immoral activities).

---

The only logical conclusion is the patent theft is a lie. George Henry was considered too smart to kill even thought he was a sick, abusive psychopath who deserved the death penalty.

He was likely given amnesty for World War II crimes in exchange for giving any work product he created to IC controlled companies.

That's why there has never been a lawsuit to recover monies from Motorola, Apple, Samsung, instead the assh0le spends all his days suing me. #SICKFUCKSALLOFTHEM"
https://twitter.com/JG_CSTT/status/1771631210143342751

[8] "yep, this has been going on for a lot longer than people may realize, it's just out in the open. Putative 2nd gen Nazi @RealGeorgeWebb1 and his mentally ill wife swapping assh0le brother have been working stasi Zersetzung operations as likely @FBI_UCOs for as long as they've been known"   https://twitter.com/JG_CSTT/status/1773823984011767930

[9] Certified Ethical Hacker Field Operations Guide: In-depth technical how to for passing the CEH exam (CEH FOG series), https://www.amazon.com/Certified-Ethical-Hacker-Operations-depth/dp/1530111722

17.     Goodman's persistent non-stop deceptive use of these advertising channels (Twitter.com, YouTube.com, Odysee.com, etc.) to disseminate disinformation campaigns, while simultaneously claiming to operate a "truth engine", amounts to false advertising, as outlined in the Amended Complaint[10].

18.     Although Plaintiff is not in direct competition with Defendant, Plaintiff has the requisite commercial or competitive interest to bring a false advertising claim against Crowdsource The Truth™ under the Lanham Act (commercial zone of interest).

19.     Goodman's and Cullen's disinformation false advertising has been the direct proximate cause of harms suffered by the Plaintiff.  This includes emotional distress, loss of business goodwill and reputational harm in Plaintiff's infrastructure protection professional writings, professional services in the realm of certified ethical hacking, and in general the area of the protection of information technology systems, which has been significantly damaged by Goodman's false advertising.

20.     Goodman's well organized disinformation campaign (to include co-anchor Cullen) has had a direct detrimental impact to the Plaintiff's area of business as the Plaintiff maintains several industry certifications that require following a moral and ethical code of ethics.  The credential of Certified Ethical Hacker[11] is only one example.

---

[10] Case 1:23-cv-05875-JGK Document 13 Filed 09/23/23 Page 40 of 81

[11] The International Council of Electronic Commerce Consultants (EC-Council), Certified Ethical Hacker (CEH) program certifies professionals who are responsible for securing (or testing the security of) computer networks from a vendor-neutral perspective. A Certified Ethical Hacker understands how to look for the weaknesses and vulnerabilities in networks and/or computer systems, and, lawfully and at the request of an organization, uses the same tools as a malicious hacker. The CEH is appropriate for security officers, auditors, security professionals, site administrators, and others who may be concerned about the integrity of their organizations network infrastructure.  https://www.cool.osd.mil/army/credential/index.html?cert=ceh4310

21.     The Plaintiff, while not in his own person a competitor of Goodman's alleged rogue Crowdsource The Truth™ enterprise, is and was, nonetheless, so situated that he could reasonably be regarded as a practical surrogate (partner, collaborator, colleague, associate, etc.).

22.     Plaintiff now seeks protection, in the form of a temporary and permanent injunctive relief[12], to enjoin Goodman from continuing unfair competition and commercial slander that violates the Lanham Act.

## LAW AND ARGUMENT

23.     In his feud with social media rival competitor Webb, Goodman makes false statements of fact which can be proven false.  These statements are (1) literally false statements against Webb and Plaintiff, and (2) statements that are false by implication (malicious disinformation).  See *Time Warner Cable, Inc. v. DIRECTV, Inc.,* No. 07-0468-cv, 2007 WL 2263932 (2d Cir. Aug. 9, 2007).

24.     The Plaintiff need not be a direct competitor of Goodman to seek protection under the Lanham Act.  In 2014 the Supreme Court established a new test requiring a plaintiff suing for false advertising under 15 U.S.C. § 1125(a) to (1) allege an injury to a commercial interest in reputation or sales; and (2) show that such injury was proximately caused by defendant's misrepresentations.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392, 24 Fla. L. Weekly Supp. 623 (2014), quoting in relevant part:

> "[P]rotect[ing] persons engaged in [commerce within the control of Congress] against unfair competition," 15 U.S.C. § 1127; and "unfair competition" was understood at common law to be concerned with injuries to business reputation and present and future sales. Thus, to come within the zone of interests in a §1125(a) false-advertising suit, a

---

[12] *McNeilab, Inc. v. American Home Prods. Corp.,* 501 F.Supp. 517, 529 (S.D.N.Y. 1980) (injunctive relief sought in false advertising case)." *Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*, 926 F.2d 134, 140 (2d Cir. 1991)

plaintiff must allege an injury to a commercial interest in reputation or sales. Pp. 129-132, 188 L. Ed. 2d, at 405-406."

### *Goodman's Malicious Disinformation and Deception*

25. "Disinformation" is a legal term discussed in dozens of federal actions in this district. *Khalil v. Fox Corp.*, 21 Civ. 10248 (LLS) (S.D.N.Y. Aug. 16, 2022) ("Powell used the disinformation campaign she operated through and with Fox and Dobbs to solicit money from individuals and corporations - including those located in New York, New York -for contributions to her so-called "legal defense" fund and Super PAC").

26. Goodman's social media disinformation campaigns are (i) "literally false" and/or (ii) impliedly false such that "while not literally false, [it] is nevertheless likely to mislead or confuse customers." *Time Warner Cable*, 497 F.3d at 153. See also *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586-87 (3d Cir. 2002) ("A literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." (internal quotation marks omitted)).

27. An advertisement is false by necessary implication if "the words or images, considered in context, necessarily imply a false message." *Time Warner Cable*, 497 F.3d at 158; see also *Tiffany (NJ) Inc. v. eBay, Inc.*, No. 04-cv-4607 (RJS), 2010 WL 3733894, at *3 (S.D.N.Y. Sept. 13, 2010) ("This common-sense doctrine allows a court to conclude that, while no individual statement in an advertisement is false, taken as a whole, the advertisement necessarily implies a falsehood.").

28. Goodman and the Crowdsource The Truth™ enterprise continuously act with the intent to dupe consumers in the manner described above and therefore consumers have been deceived. *Camel Hair Mfrs. v. Saks*, 284 F.3d 302 (1st Cir. 2002) ("It is well established that if there is

14

proof that a defendant intentionally set out to deceive or mislead consumers, a presumption arises that customers in fact have been deceived"). *Camel Hair v. Saks* relied on by *N. Am. Olive Oil Assocation v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013).

29. Goodman must now defend his zero-fact statements, as it is presumed, Goodman has misled consumers. See *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1333 (8th Cir. 1997) (approving of a presumption of consumer deception upon a finding that defendant acted deliberately to deceive); see also *U-Haul Int'l Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986).

### *Public Interests favor Injunctive Relief*

30. Plaintiff asserts that he is entitled to temporary and permanent injunctive relief because prior restraint is not an issue on the facts before the Court. Preventing prior restraints on speech is not, by itself, a sufficient reason for refusing to grant injunctive relief to prevent defamatory speech. *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1208-09 (6th Cir. 1990). In *Lothschuetz v. Carpenter* the Sixth Circuit approved injunctive relief in a defamation case to stop repeated defamation. The court reasoned "an injunction [was] necessary to prevent future injury to [the] plaintiff's personal reputation and business relations" given the defendants' "frequent and continuing defamatory statements."

31. Indeed, New York courts have approved permanent injunctions against future libelous statements where the libel is "part of 'a sustained campaign,'" *Eugene Volokh, Anti-Libel Injunctions*, 168 U. Pa. L. Rev. 73, 141 (2019) (citations omitted), and where the libelous statements injure a business interest or other property right. See *Rombom v. Weberman,* 2002 WL 1461890 (Sup.Ct. Kings Co. June 13, 2002), aff'd, 766 N.Y.S.2d 88 (2d Dept. 2003) at *13 (approving modified permanent injunction where "the statements made by defendants were

calculated, in large part, to injure plaintiff's business, justifying the issuance of a mandatory injunction."); *Bingham v. Struve*, 591 N.Y.S.2d 156, 158 (N.Y. App. Div. 1992) (approving preliminary injunction against allegedly defamatory speech that was "capable of injuring plaintiff-husband's standing and reputation in all aspects of his personal and professional life, and of inflicting serious psychological and emotional damage to both plaintiffs, as well as to their family members"); *Ansonia Assocs. Ltd. P'ship v. Ansonia Tenants' Coal., Inc.*, 677 N.Y.S.2d 575, 576 (N.Y. App. Div. 1998) (affirming preliminary injunction where "defendants' conduct was not protected speech but merely an instrument of and incidental to wrongful conduct . . . , calculated to injure plaintiff's business") (citation omitted).

32. It is self-evident that preventing false or misleading advertising is in the public interest. See *N. Am. Olive Oil Ass'n*, 962 F.Supp.2d at 524 (noting public interest would be "well served by ensuring that consumers do not purchase a product based on false advertising"); *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1321 (11th Cir.2010) ("[T]he public interest is served by preventing customer confusion or deception.").

33. Therefore, the issuance of an injunction would be in the public interest.

### *Irreparable Injury to Plaintiff's Reputation and Goodwill*

34. This sudden shift of the "Webb of Deception" disinformation campaign (part of a much larger deception initiative) to target the Plaintiff by Goodman and his co-anchor, Internet personality John Cullen, will undoubtedly cause even more injury to the Plaintiff's reputation as a Certified Ethical Hacker (C.E.H.), a Certified Emergency Management Specialist (C.E.M.S.) and holder of the Certificate in Cloud Security Knowledge (C.C.S.K.). In some cases, such certifications take years of study to obtain and are tantamount to becoming a Certified Public Accountant or Registered Nurse. It would be an analogous equivalent to accuse a federal jurist

of conspiring with the Plaintiff to hurt Goodman based on "evidence", which Goodman has done (repeatedly and continuously) simply because he lost one of his many frivolous legal actions.

35.     Goodman's statements that the Plaintiff is involved in clandestine and covert illegal conspiracies are in direct opposition to the Code of Ethics and ethical principles of the C.E.H. profession, which forbid participation in anything that would be considered a violation of law. Goodman knows this.  Nevertheless, Goodman's non-stop disinformation campaigns continually accuse the Plaintiff of violating a myriad of laws.

36.     At this stage, Plaintiff does not have to prove actual damages to obtain injunctive relief, the "plaintiff does not need to establish actual damages, and is instead held to a lesser standard of proving that it is likely that the defendant's advertising has caused or will cause plaintiff injury." *Berken v. Jude,* No. 12-CV-02555-RPM, 2013 WL 6152347, at *2 (D. Colo. Nov. 22, 2013).

37.     In other words, when the plaintiff is seeking an injunction, "[t]he statute demands only proof providing a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising" and not "proof of actual loss and specific evidence of causation." *Johnson & Johnson v. Carter-Wallace, Inc.,* 631 F.2d 186, 190 (2d Cir. 1980).

## **RELIEF REQUESTED**

38.     To warn the unsuspecting public, the *pro se* Plaintiff seeks a Court order that would require Goodman to (1) display a warning or marking embedded in all video content (such as feature film credits) for a period of at least ten (10) seconds and (2) to place such a warning in the description box of all future video podcasts that Goodman inserts into interstate communications platforms (to include YouTube.com, SubScribeStar.com, Odysee.com, PATREON.com and/or SubStack.com) that states the following:  "The federal court in the Southern District of New York has dismissed the following legal actions brought by Jason

Goodman with prejudice: *Goodman v. Bouzy*, 21-CV-10878-AT and *Goodman v. Sharp*, 21-CV-10627-VEC". A comparable Twitter warning banner is also required.

39.     At such time when *Goodman v. The City of New York*, 23-CV-9648 (JGLC) is dismissed with prejudice, that notation should also be added to the warning.

40.     Further, Plaintiff requests the Court enjoin Goodman from any and all future statements about the Plaintiff that attempt to establish that the Plaintiff:

- Is a contractor, employee or associate of the National Institute of Health; and,

- Is the son of a Nazi Operation Paperclip war criminal; and,

- Has been involved in creating forged court documents for any U.S. District Court; and,

- Is a hacker that uses his "hacking" skills in an unauthrized manner; and,

- Shares any past, present or future spouse with his brother as a wife swapper; and,

- Is an "undercover operative" ("UCO") working with the Federal Bureau of Investigation; and,

- Had something to, in regard, with the closure of the Port of Charleston, S.C. by a dirty bomb hoax; and,

- Is involved in a conspiracy with U.S. District Judge Valerie E. Caproni in any way, whatsoever; and,

- Is involved in any criminal conduct, whatsoever.

The Court should also enjoin Goodman to publish a series of retractions that state:

"I, Jason Goodman, have no evidence to conclude that George H. Sweigert, inventor of the cordless telephone, has ever had any association, whatsoever, with the Nazi party, Operation Paperclip or any such relationship with the enemies, past or present, of the United States.

I further state that I have no evidence, whatsoever, that would implicate David G. Sweigert in any activity related to the submission of forged documents to any U.S. District Court. Nor did I have any evidence that Mr. Sweigert is an undercover operative working with the Federal Bureau of Investigation. Nor do I have any evidence that Mr. Sweigert is an employee, contractor, or is in any way, associated with the U.S. National Institute of Health.

Further, I have no evidence that Mr. Sweigert is a wife swapper that shares spouses, past, present or future, with his estranged brother George Webb Sweigert. Nor do I have evidence that Mr. Sweigert has ever engaged in any activity which might tend to be perceived as a violation of the ethical standards for this in the infrastructure protection industry, such as certified ethical hackers.

Nor do I have any evidence that Mr. Sweigert was involved with drug smuggling in Central America as part of the Iran-Contra scandal, or any criminal act of any kind.

Nor do I have any evidence that Mr. Sweigert has violated any so-called cyber stalking law.

Nor do I have evidence that the mother of Mr. Sweigert's son slept with George Webb Sweigert.

Nor do I have evidence that Mr. Sweigert suffers from any kind of mental illness, whatsoever.

Nor do I have any evidence, whatsoever, that Mr. Sweigert is engaged in a conspiracy, of any kind, with U.S. District Judge Valerie E. Caproni."

Respectfully submitted under penalties of perjury to be truthful.  Signed April 22, 2024

(4/22/2024)

*D. Sgt*

            **D. G. SWEIGERT PRO SE PLAINTIFF, C/O**
            **PMB 13339, 514 Americas Way,**
            **Box Elder, SD 57719**