# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| D. G. Sweigert, | PRO SE |
|---|---|
| -against- | 23-cv-05875-JGK-VF |
| Jason Goodman, | Judge John G. Koeltl |
| | Related Case: 23-cv-06881-JGK-VF |

## PLAINTIFF'S EXHIBITS ANNEX

The *pro se* Plaintiff now complies with the 3/25/2024 Memo Endorsement, ECF no. 125. On 3/08/2024, the Defendant filed his motion papers at ECF no. 120 and 121, to which this document responds. This is an **EXHIBIT ANNEX.**

Signed April 4, 2024 (4/04/2024)

**D. G. SWEIGERT PRO SE PLAINTIFF, C/O**
**PMB 13339, 514 Americas Way,**
**Box Elder, SD 57719**

## CERTIFICATE OF SERVICE

Copy of this pleading has been placed in the U.S. MAIL addressed to Jason Goodman, 252 7th Avenue, New York, N.Y. 10001 on April 4, 2024 (4/04/2024). Signed April 4, 2024 (3/13/2024)

**D. G. SWEIGERT PRO SE PLAINTIFF, C/O PMB 13339,**
**514 Americas Way, Box Elder, SD 57719**

1

# EXHIBITS

**EXHIBIT A  -  SHOW CAUSE ORDER**................................................................3

**EXHIBIT B - FIRST SWORN DECLARATION OF PLAINTIFF** ...................4

**EXHIBIT C - JUDGE DOUGHTY'S PRELIMINARY INJUNCTION OF 7/04/2023**................................................................5

**EXHIBIT D – JUDGE DOUGHTY'S ORDER OF 1/10/2024** ...........................6

**EXHIBIT E – JUDGE DOUGHTY'S ORDER OF 1/19/2024** ...........................7

**EXHIBIT F – GOODMAN'S LOUISIANA INTERVENTION PAPERS**........8

**EXHIBIT G – SAMPLE OF GOODMAN'S TWEETS ABOUT PLAINTIFF**.9

# EXHIBIT A  -  SHOW CAUSE ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
JASON GOODMAN,

                                   :

                           Plaintiff,

                                   :                 <u>ORDER TO SHOW CAUSE</u>

          -against-                    23 Civ. 9648 (JGLC) (GWG)

                                   :

THE CITY OF NEW YORK et al.,

                                   :

                         Defendants.

                                   :
-----------------------------------------------------X
GABRIEL W. GORENSTEIN, United State Magistrate Judge

       Plaintiff Jason Goodman filed this action against the City of New York, the New York
Police Department ("NYPD"), various named and unnamed NYPD officers and employees, X
Corp., Elon Musk, and Adam Sharp. <u>See</u> Complaint, filed Oct. 31, 2023 (Docket # 1)
("Compl."). Goodman has recently obtained a clerk's certificate of default as to defendant
Musk. <u>See</u> Clerk's Certificate of Default, filed March 22, 2024 (Docket # 83). While it is
unclear to the Court whether the filings in this case show proper service as to defendant Musk, it
is unnecessary to reach that issue at this time.

       The Court has examined the briefing made in connection with X Corp.'s motion to
dismiss the complaint, <u>see</u> Docket ## 19, 40, 47, and it appears that the arguments made in that
motion would also govern any claims as to Musk, who is alleged to be the "owner" of X Corp,
<u>see</u> Compl. ¶ 18(b). Additionally, the complaint arguably fails to show that Musk was
personally involved in or should be vicariously liable as to any alleged wrongful conduct.

       Accordingly, plaintiff is hereby ORDERED TO SHOW CAUSE why the claims as to
Musk should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.
Such showing shall be made by means of a memorandum of law compliant with Local Civil Rule
7.1(a)(2) filed on or before April 8, 2024. If X Corp. has views on this matter that may be
helpful to the Court, it may address them in a response filed by April 22, 2024. Plaintiff may file
any reply by April 29, 2024.

       Finally, plaintiff shall not file any letter seeking permission to make a motion for a
default judgment against Elon Musk (or any such motion itself) until this Order to Show Cause is
resolved.

SO ORDERED.

Dated: March 25, 2024
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

# EXHIBIT B - FIRST SWORN DECLARATION OF PLAINTIFF

FILED

01/29/2024

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **D. G. Sweigert,**<br>**Plaintiff**<br><br>-against-<br><br>**Jason Goodman,**<br>**dba**<br>**21st Century 3D**<br>**dba**<br>**CrowdSource The Truth** | **PRO SE**<br><br>**1:23-cv-01228-JRS-MG**<br><br>**Judge James R. Sweeney II** |

## FIRST SWORN DECLARATION OF PLAINTIFF

**THE PRO SE PLAINTIFF herein** provides this declaration to conserve judicial resources and to refute untruthful statements made in court by the Defendant Jason Goodman, a YouTuber that operates several social media channels.

A copy of this document was mailed via the U.S. Post Office to: Jason Goodman, 252 7th Avenue, Suite 6-S, New York, N.Y. 10001.  Sworn under penalties of perjury.

Signed January 29, 2024 (1/29/2024)

**D. G. SWEIGERT PRO SE PLAINTIFF, C/O**
**PMB 13339, 514 Americas Way,**
**Box Elder, SD 57719**

1

## FIRST SWORN DECLARATION OF PLAINTIFF

The undersigned draws the readers attention to ECF no. 51 so-called "Request for Judicial Notice" that Mr. Goodman caused to be filed in the federal lawsuit in the District serving Southern Indiana, Case 1:23-cv-01228-JRS-MG.

At para. 9  Mr. Goodman states, "*9. On or around October 2023, Goodman learned Sweigert has been employed as a contractor to the National Institutes of Health, ("NIH") since September 2022. (EXHIBIT B)*".  (Document 51 filed 01/26/24).

The undersigned has never worked in any capacity for the U.S. National Institute of Health.

At para 12 Mr. Goodman states, "*12. Sweigert offered to remove Google from the frivolous action if they agreed to terminate various accounts controlled by Goodman including YouTube channels that Sweigert was aware Goodman relied upon to legally exercise the first amendment, to promote his business, and to earn a living. (See Sweigert v Goodman 1:23-cv-06881-JGK-VF Dkt. 62).*"  (Document 51 filed 01/26/24).

The YouTube channels Mr. Goodman refers to were removed shortly after ALPHABET, INC. was served with process.  The undersigned did not speak to counsel representing ALPHABET until a week after these channels were removed.  The undersigned can contact that counsel and obtain a sworn statement if the Court desires such a statement.  No *quid pro quo* agreement or arrangement was ever discussed as the channels had already been removed.

At para 1 Mr. Goodman states, "*1. As the Court is aware, David George Sweigert ("Sweigert") has announced plans to sue Goodman for the rest of his life and has been doing that in an ongoing manner since 2017.*"  (Document 51 filed 01/26/24).

2

The undersigned does not recall ever making such a statement.

Concerning para 5 and 6, "*5. On November 20, 2023, pro se non-attorney Goodman filed a defective motion to consolidate this instant action with another vexatious action filed by Sweigert in the Southern District of New York ("SDNY") on July 4, 2023 [emphasis added], (See Sweigert v Goodman 1:23-cv-05875-JGK-VF Dkt. 77 (SDNY)).*" (Document 51 filed 01/26/24).

"*6. Goodman misunderstood the consolidation process. He intended to preserve this Honorable Court's judicial resources by consolidating this action into the SDNY case because Goodman had filed a motion seeking sanctions pursuant to FRCP Rule 11 on November 7, 2023, (See Sweigert v Goodman 1:23-cv-06881-JGK-VF Dkt. 53) which he expected would be granted.*"

Mr. Goodman omits that the court serving the Southern District of New York issued ORDER ECF no. 88 explaining the consolidation process on 12/05/2023 and the need to file a motion in the District for Southern Indiana.

Said ORDER (ECF no. 88) cited 28 U.S.C. Sec. 1404(a) and 1406(a).

Mr. Goodman never filed such a motion for transfer or consolidation in the federal lawsuit in the District serving Southern Indiana, Case 1:23-cv-01228-JRS-MG.

Sworn under penalties of perjury. Signed January 29, 2024 (1/29/2024)

**D. G. SWEIGERT PRO SE PLAINTIFF, C/O**
**PMB 13339, 514 Americas Way,**
**Box Elder, SD 57719**

3

# EXHIBIT C - JUDGE DOUGHTY'S PRELIMINARY INJUNCTION OF 7/04/2023

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

STATE OF MISSOURI, ET AL.    CASE NO.  3:22-CV-01213

VERSUS         JUDGE TERRY A. DOUGHTY

JOSEPH R BIDEN JR., ET AL.    MAG. JUDGE KAYLA D. MCCLUSKY

## JUDGMENT

For the reasons set forth in the Memorandum Ruling on the Request for Preliminary Injunction,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Plaintiffs' Motion for Preliminary Injunction [Doc. No. 10] is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that: the **DEPARTMENT OF HEALTH AND HUMAN SERVICES** ("HHS") and **THE NATIONAL INSTITUTE OF ALLERGY AND INFECTIOUS DISEASES** ("NIAID"), and specifically the following employees of the HHS and NIAID: **XAVIER BECERRA,**[1] Secretary of HHS; **DR. HUGH AUCHINCLOSS**, Director of NIAID; **YOLANDA BYRD**, HHS Digital Engagement Team; **CHRISTY CHOI**, HHS Office of Communications; **ASHLEY MORSE**, HHS Director of Digital Engagement; **JOSHUA PECK**, HHS Deputy Assistant Secretary, Deputy Digital Director of HHS successor (formerly **JANELL MUHAMMED**); along with their secretaries, directors, administrators and employees; **SURGEON GENERAL VIVEK H. MURTHY**, **KATHARINE DEALY**, Chief Engagement Officer for the Surgeon General, along with her secretaries, directors, administrators, and employees; the **CENTERS FOR DISEASE CONTROL AND PREVENTION** ("CDC"), and specifically the following employees: **CAROL Y. CRAWFORD**, Chief of the Digital Media

---

[1] All individuals named in this Judgment are being sued in their official capacities.

1

Branch of the CDC Division of Public Affairs; **JAY DEMPSEY**, Social-media Team Leader, Digital Media Branch, CDC Division of Public Affairs; **KATE GALATAS**, CDC Deputy Communications Director; **UNITED STATES CENSUS BUREAU** ("Census Bureau"), and specifically the following employees: **JENNIFER SHOPKORN**, Census Bureau Senior Advisor for Communications, Division Chief for the Communications Directorate, and Deputy Director of the Census Bureau Office of Faith Based and Neighborhood Partnerships**,** along with their secretaries, directors, administrators and employees; the **FEDERAL BUREAU OF INVESTIGATION** ("FBI"), and specifically the following employees: **LAURA DEHMLOW**, Section Chief, FBI Foreign Influence Task Force; **ELVIS M. CHAN**, Supervisory Special Agent of Squad CY-1 in the FBI San Francisco Division; **THE UNITED STATES DEPARTMENT OF JUSTICE**, along with their secretary, director, administrators, and employees; the following members of the Executive Office of the President of the United States: White House Press Secretary **KARINE JEAN-PIERRE**, Counsel to the President; **STUART F. DELERY**, White House Partnerships Manager; **AISHA SHAH**, Special Assistant to the President; **SARAH BERAN**, **MINA HSIANG**, Administrator of the United States Digital Service within the Office of Management and Budget; **ALI ZAIDI**, White House National Climate Advisor; White House Senior COVID-19 Advisor successor (formerly **ANDREW SLAVITT**); Deputy Assistant to the President and Director of Digital Strategy successor (formerly **ROB FLAHERTY**); **DORI SALCIDO**, White House COVID-19 Director of Strategic Communications and Engagement; White House Digital Director for the COVID-19 Response Team successor (formerly **CLARKE HUMPHREY**); Deputy Director of Strategic Communications and Engagement of the White House COVID-19 Response Team successor (formerly **BENJAMIN WAKANA**); Deputy Director for Strategic Communications and External Engagement for the White House COVID-

19 Response Team successor (formerly **SUBHAN CHEEMA**); White House COVID-19 Supply Coordinator successor (formerly **TIMOTHY W. MANNING**); Chief Medical Advisor to the President, **DR. HUGH AUCHINCLOSS**, along with their directors, administrators and employees; the **CYBERSECURITY AND INFRASTRUCTURE SECURITY AGENCY** ("**CISA**"), and specifically the following employees: **JEN EASTERLY**, Director of CISA; **KIM WYMAN**, Senior Cybersecurity Advisor and Senior Election Security Leader; **LAUREN PROTENTIS**; **GEOFFREY HALE**; **ALLISON SNELL**; **BRIAN SCULLY**, Officials of CISA; the **UNITED STATES DEPARTMENT OF HOMELAND SECURITY** ("DHS"), and specifically the following employees: **ALEJANDRO MAYORKAS**, Secretary of DHS; **ROBERT SILVERS**, Under-Secretary of the Office of Strategy, Policy and Plans; **SAMANTHA VINOGRAD**, Senior Counselor for National Security in the Official of the Secretary for DHS, along with their secretary, directors, administrators, and employees; the **UNITED STATES DEPARTMENT OF STATE** ("State Department"), and specifically the following employees: **LEAH BRAY**, Acting Coordinator of the State Department's Global Engagement Center ("GEC"); **ALEX FRISBIE**, State Department Senior Technical Advisor and member of the Technology Engagement Team at the GEC; **DANIEL KIMMAGE**, Acting Coordinator of the GEC, along with their secretary, directors, administrators, and employees **ARE HEREBY ENJOINED AND RESTRAINED** from taking the following actions as to social-media companies:[2]

---

[2] "Social-media companies" include Facebook/Meta, Twitter, YouTube/Google, WhatsApp, Instagram, WeChat, TikTok, Sina Weibo, QQ, Telegram, Snapchat, Kuaishou, Qzone, Pinterest, Reddit, LinkedIn, Quora, Discord, Twitch, Tumblr, Mastodon, and like companies.

(1)     meeting with social-media companies for the purpose of urging, encouraging, pressuring, or inducing in any manner the removal, deletion, suppression, or reduction of content containing protected free speech posted on social-media platforms;[3]

(2)     specifically flagging content or posts on social-media platforms and/or forwarding such to social-media companies urging, encouraging, pressuring, or inducing in any manner for removal, deletion, suppression, or reduction of content containing protected free speech;

(3)     urging, encouraging, pressuring, or inducing in any manner social-media companies to change their guidelines for removing, deleting, suppressing, or reducing content containing protected free speech;

(4)     emailing, calling, sending letters, texting, or engaging in any communication of any kind with social-media companies urging, encouraging, pressuring, or inducing in any manner for removal, deletion, suppression, or reduction of content containing protected free speech;

(5)     collaborating, coordinating, partnering, switchboarding, and/or jointly working with the Election Integrity Partnership, the Virality Project, the Stanford Internet Observatory, or any like project or group for the purpose of urging, encouraging, pressuring, or inducing in any manner removal, deletion, suppression, or reduction of content posted with social-media companies containing protected free speech;

(6)     threatening, pressuring, or coercing social-media companies in any manner to remove, delete, suppress, or reduce posted content of postings containing protected free speech;

---

[3] "Protected free speech" means speech that is protected by the Free Speech Clause of the First Amendment to the United States Constitution in accordance with jurisprudence of the United States Supreme Court, Courts of Appeal and District Courts.

(7)     taking any action such as urging, encouraging, pressuring, or inducing in any manner social-media companies to remove, delete, suppress, or reduce posted content protected by the Free Speech Clause of the First Amendment to the United States Constitution;

(8)     following up with social-media companies to determine whether the social-media companies removed, deleted, suppressed, or reduced previous social-media postings containing protected free speech;

(9)     requesting content reports from social-media companies detailing actions taken to remove, delete, suppress, or reduce content containing protected free speech; and

(10)     notifying social-media companies to Be on The Lookout ("BOLO") for postings containing protected free speech.

This Preliminary Injunction precludes said named Defendants, their agents, officers, employees, contractors, and all acting in concert with them from the aforementioned conduct. This Preliminary Injunction also precludes said named Defendants, their agents, officers, employees, and contractors from acting in concert with others who are engaged in said conduct.

**IT IS FURTHER ORDERED** that the following actions are **NOT** prohibited by this Preliminary Injunction:

(1)     informing social-media companies of postings involving criminal activity or criminal conspiracies;

(2)     contacting and/or notifying social-media companies of national security threats, extortion, or other threats posted on its platform;

(3)     contacting and/or notifying social-media companies about criminal efforts to suppress voting, to provide illegal campaign contributions, of cyber-attacks against election infrastructure, or foreign attempts to influence elections;

(4)     informing social-media companies of threats that threaten the public safety or security of the United States;

(5)     exercising permissible public government speech promoting government policies or views on matters of public concern;

(6)     informing social-media companies of postings intending to mislead voters about voting requirements and procedures;

(7)     informing or communicating with social-media companies in an effort to detect, prevent, or mitigate malicious cyber activity;

(8)     communicating with social-media companies about deleting, removing, suppressing, or reducing posts on social-media platforms that are not protected free speech by the Free Speech Clause in the First Amendment to the United States Constitution.

**IT IS FURTHER ORDERED** that no security is required to be posted by Plaintiffs under Federal Rule of Civil Procedure 65.

**IT IS FURTHER ORDERED** that this Preliminary Injunction Order shall remain in effect pending the final resolution of this case or until further orders issue from this Court, the United States Court of Appeals for the Fifth Circuit, or the Supreme Court of the United States.

**IT IS FURTHER ORDERD** that the Motion for Preliminary Injunction [Doc. No. 10] is **DENIED** as to the following Defendants: U.S. Food and Drug Administration; U. S. Department of Treasury; U.S. Election Assistance Commission; U. S. Department of Commerce and employees Erica Jefferson, Michael Murray, Wally Adeyemo, Steven Frid, Brad Kimberly, and Kristen Muthig; and Disinformation Governance Board ("DGB") and its Director Nina Jankowicz.

**IT IS FURTHER ORDERED** that no evidentiary hearing is required at this time.

**IT IS FURTHER ORDERED** that Plaintiffs' request for certification of this proceeding as a class action pursuant to Fed. R. Civ. P. Article 23 (b)(2) is **DENIED.**

**THUS, DONE AND SIGNED IN MONROE, LOUISIANA,** this 4th day of July 2023**.**

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT D – JUDGE DOUGHTY'S ORDER OF 1/10/2024

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

ROBERT F KENNEDY JR ET AL           CASE NO.  3:23-CV-00381

VERSUS                         JUDGE TERRY A. DOUGHTY

JOSEPH R BIDEN JR ET AL          MAG. JUDGE KAYLA D. MCCLUSKY

### MEMORANDUM ORDER

Before this Court is a Motion to Intervene [Doc. No. 31] filed by Jason Goodman ("Goodman"). For the reasons set forth herein, Goodman's Motion to Intervene is **DENIED**.

## I.    BACKGROUND

In this proceeding, Robert F. Kennedy Jr., Children's Health Defense, and Connie Sampognaro filed a Complaint [Doc. No. 1] alleging collusion and/or coercion by Defendants[1] with social media companies to suppress disfavored speakers, viewpoints, and contents in violation of the First Amendment to the United States Constitution.

On January 3, 2024, Goodman filed a Motion to Intervene [Doc. No. 31] in this proceeding.  In his motion, Goodman alleges that he is an Investigative Journalist, talk show host and the founder of the social media brand *Crowdsource the Truth*. Goodman asks to intervene in

---

[1] Defendants consist of Joseph R. Biden, Jr., Karine Jean-Pierre, Vivek H. Murthy, Xavier Becerra, Dept. of Health & Human Services, Anthony Fauci, National Institute of Allergy & Infectious Diseases, Centers for Disease Control & Prevention, Carol Y. Crawford, Untied States Census Bureau, Jennifer Shopkorn, U.S. Department of Commerce, Alejandro Mayorkas, Robert Silvers, Samantha Vinograd, Department of Homeland Security, Jen Easterly, Cybersecurity & Infrastructure Security Agency, Gina McCarthy, Nina Jankowicz, Andrew Slavitt, Rob Flaherty, Courtney Rowe, Clarke Humphrey, Benhamin Wakana, Dana Remus, Aisha Shah, Laura Rosenberger, Mina Hsiang, U.S. Department of Justice, Federal Bureau of Investigation, Laura Dehmlow, Elvis M.. Chan, Jay Dempsey, Eric Waldo, Yolanda Byrd, Christy Choi. Tericka Lambert, Joshua Peck, Janell Muhammad, Matthew Masterson, Lauren Protentis, Geoffery Hale, Allison Snell, Brian Scully, Zachary Henry Schwartz, Lorena Molina-Irizarry, Kristin Galemore, U.S. Food and Drug Administration, Erica Jefferson, Michael Murray, Brad Kimberly, U.S. Department of State, Samaruddin K. Stewart, Daniel Kimmage, Alexis Frisbie, U.S. Department of Treasury, Mark A. Robbins, Kristen Muthig,

this proceeding by Intervention of Right and/or by Permissive Intervention because he brings

specific facts the current parties are unaware of, which will expediate adjudication of this matter.

## II.    LAW AND ANALYSIS

### A.    Intervention of Right

Federal Rule of Civil Procedure, Rule 24(a) states:

> (a) Intervention of Right.  On timely motion, the court must permit
> anyone to intervene who:
> (1) is given an unconditional right to intervene by federal statute: or
> (2) claims an interest relating to the property or transaction that is
> the subject of the action and is so situated that disposing of the action
> may as a practical matter impair or impede the movant's ability to
> protect its interest, unless existing parties adequately represent that
> interest.

To obtain intervention as of right, an intervenor must satisfy a four prong test:  (1) the

application must be timely;  (2) the applicant must have an interest relating to the property or

transaction which is the subject of the action; (3) the applicant must be so situated that the

disposition of the action may, as a practical matter, impair or impede his ability to protect that

interest; and (4) the applicant's interest must be inadequately represented by the existing parties

to the suit.  All four of these requirements must be met to be allowed intervention of right.  *Texas*

*v. United States,* 805 F. 3d 653, 657 (5th Cir. 1996).

Addressing the four-prong test, there are no allegations or evidence to show that

Goodman's interest would be inadequately represented by the existing parties in the suit.  There

is a presumption of adequate representation when the applicant has the "same ultimate objective"

as a party in the lawsuit.  Goodman's allegations align with the Plaintiffs, and Goodman has not

overcome the presumption of adequate representation.  Therefore, Goodman's Motion to

Intervene by an Intervention of Right is DENIED.

### B.    Permissive Intervention

Federal Rule of Civil Procedure, Rule 24(b) states:

> (b) Permissive Intervention
> (1) In General. On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene by a federal statute; or
> (B) has a claim or defense that shares with the main action a common question of law or fact.

District Courts have broad discretion in allowing intervention. *Trans Chemical Ltd. V. China National Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 824 (5th Cir. 2003). The denial of a request for permissive intervention may be denied when an existing party adequately represents the proposed intervenors. *Hopwood v. State of Texas*, 21 F.3d 603, 606 (5th Cir. 1994). As previously discussed, the Plaintiffs adequately represent Goodman's ultimate objective.

Goodman is alleged to be a victim of the supposed First Amendment suppression. First, as previously addressed, Goodman has not shown he is not adequately represented by the named Plaintiffs in this proceeding. If this Court were to allow Goodman to intervene in this proceeding, it would open the door for other alleged victims to intervene, which would likely slow down the expedited discovery schedule previously set. Therefore, for these reasons, Goodman's Motion to Intervene by Permissive Intervention is DENIED.

## III.     CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Jason Goodman's Motion to Intervene [Doc. No. 31] is **DENIED**.

**MONROE, LOUISIANA,** this 10th day of January 2024.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT E – JUDGE DOUGHTY'S ORDER OF 1/19/2024

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

ROBERT F KENNEDY JR ET AL        CASE NO. 3:23-CV-00381

VERSUS        JUDGE TERRY A. DOUGHTY

JOSEPH R BIDEN JR ET AL        MAG. JUDGE KAYLA D. MCCLUSKY

## ORDER

The Court is in receipt of a letter/Motion [Doc. No. 36] filed *pro se* by non-party Jason Goodman ("Goodman"). The Court construes the Motion to be a Motion for Reconsideration. Goodman is moving the Court to reconsider its Memorandum Order [Doc. No. 33] denying his Motion to Intervene [Doc. No. 31]. Goodman asserts a number of reasons that the Court should reconsider its Order, but, overall, he asserts that "Critical information was omitted from Goodman's filing as a result of inexcusable error that occurred when documents were scanned and entered on the ECF docket." [Doc. No. 36, p. 1]. The Court has previously considered the information Goodman asserts in the instant motion, and it found that Goodman did not meet the requirements for intervention.

While there is no motion for reconsideration *per se,* there is a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). The Fifth Circuit has explained that a Rule 59(e) motion "calls into question the correctness of a judgment," but "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered," or were offered, "before the entry of judgment." *Templet v. HydroChem, Inc*., 367 F.3d 473, 478-79 (5th Cir. 2004) (citations and internal quotation marks omitted). The Court sees no reason to alter or amend its previous Order. Accordingly,

**IT IS ORDERED** that Goodman's Motion for Reconsideration [Doc No. 36] is **DENIED**.

MONROE, LOUISIANA, this 19th day of January 2024.

_____
Terry A. Doughty
United States District Judge

# EXHIBIT F – GOODMAN'S LOUISIANA INTERVENTION PAPERS

RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
1/3/24

IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

23-cv-00381-TAD-KDM

-------------------------------------------------------------------X

ROBERT F. KENNEDY, JR. ET AL.,

Plaintiff,

-versus-

JOSEPH R. BIDEN ET AL.

Defendants.

-------------------------------------------------------------------X

**[PROPOSED]
MEMORANDUM IN
SUPPORT OF
MOTION SEEKING
LEAVE TO
INTERVENE**

Intervenor applicant, Jason Goodman, ("Goodman") by and for himself pro se,

respectfully submits this motion seeking leave to intervene as co-plaintiff pursuant to FRCP Rule

24. With this motion, Goodman alleges the following on the basis of personal knowledge with

respect to himself and upon information and belief with regard to all other allegations.

## INTRODUCTION

1.      Goodman seeks to intervene by right, pursuant to FRCP Rule 24(a)(2), or in the

alternate, permissively pursuant to Rule 24(b)(1)(B). Goodman is currently engaged in litigation

that shares common questions of law and fact, but moreover, includes common defendants with

this instant action, (*See NATAS v MSDI* 1:20-cv-07269-VEC-OTW, *Goodman v Bouzy et al.*,

1:21-cv-10878-AT-JLC, *Sweigert v Goodman* 1:23-cv-06881-JGK-VF, *Sweigert v Goodman*

1:23-cv-06881-JGK-VF, *Sweigert v Goodman* 1:23-cv-01228-JRS-MG, *Goodman v the City of*

*New York et al* 1:23-cv-09648-JGLC-GWG).

2.      If the Court should determine Goodman does not meet the requirements for

intervention by right, alternately Goodman seeks to intervene permissively because the above

cited cases share claims and defenses that have questions of law and fact in common with this

instant action and its disposition may impair Goodman's ability to protect his interests.

**GOODMAN SHOULD BE GRANTED INTERVENTION BY RIGHT**

3.      A party seeking to intervene as of right must satisfy four requirements: (1) The
application must be timely; (2) the applicant must have an interest relating to the property or
transaction that is the subject of the action; (3) the applicant must be so situated that the
disposition of the action may, as a practical matter, impair or impede its ability to protect its
interest; and (4) the applicant's interest must be inadequately represented by the existing parties
to the suit. If a party seeking to intervene fails to meet any one of these requirements, it cannot
intervene as a matter of right.

*Sierra Club v. Espy*, 18 F.3d 1202, 1203 (5th Cir. 1994)

4.      Here, Goodman meets each requirement.  This application is timely because in
October 2023, Goodman learned that the plaintiff in *Sweigert v Goodman* is employed by the
National Institutes of Health, ("NIH").  Goodman further learned the plaintiff sued in a deliberate
attempt to circumvent this Court's July 4, 2023 ruling.  Goodman acted as quickly as he was able
to make this application after he learned the plaintiff was a government employee.

5.      Goodman's interest in the transaction at the heart of this matter aligns with the
Plaintiffs' and every other American citizen whose right to freely access the first amendment was
obstructed by the government, its agencies and employees, and their contractor proxies.

6.      Goodman is presently situated in such a way that disposition of this instant action
may, as a practical matter, impair or impede his ability to protect or defend his common interest.

7.      Goodman's interest in this matter is inadequately represented by the existing
parties to the suit because they are unaware of specific facts that Goodman brings forth now with
this motion to intervene.  These new facts will expedite adjudication of this matter and expand

[PROPOSED] MEMORANDUM IN SUPPORT OF MOTION SEEKING LEAVE TO     2
INTERVENE

the Court's understanding of the clandestine tactics deliberately calculated to circumvent this Court's rulings and the evolving circumstances at the heart of this important legal action.

8.    Determining the timeliness of a motion to intervene entails consideration of four factors: (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Sierra Club v. Espy,* 18 F.3d 1202, 1203 (5th Cir. 1994)

9.    This application is timely because on or around October 10, 2023, Goodman learned that an individual who has been cyber stalking and harassing him for more than six years is a contract support employee at the NIH. The employee's profile page was recently removed https://public.csr.nih.gov/AboutCSR/StaffDirectory/3430. **(EXHIBIT A)**

10.    This application is timely because the existing parties will not suffer prejudice as a result of Goodman intervening now. Goodman sought intervention as soon as he realized his litigation shared questions of fact and law and had defendants in common with this case.

11.    Goodman was previously aware of *Missouri v Biden* and *Kennedy v Google,* but he did not attempt to intervene because of the Court's responses to other attempts and because of that case's pending status with the Supreme Court.

12.    Goodman did not know about *Kennedy v Biden* until very recently. After Goodman learned of the actions of an NIH contract support employee, he realized his litigation

[PROPOSED] MEMORANDUM IN SUPPORT OF MOTION SEEKING LEAVE TO INTERVENE                    3

was sufficiently related to this instant action to require intervention. Intervention will not delay these proceedings which are largely stayed for the reasons cited in Defendants' Response to the Court's December 13, 2023 Order. (Dkt. 29)

### PERMISSIVE INTERVENTION WOULD SERVE JUSTICE

13.     In addition to the good reasons stated herein, the Court should grant Goodman permission to intervene for the reasons cited in Plaintiffs' Supplemental Memorandum (Dkt. 30). This Court retains jurisdiction over the matters at controversy in this action. Granting Goodman permission to intervene would be in the interest of justice because it will provide the Court with new evidence that will prove that U.S. Government agencies, their employees and contractors have attempted to deliberately circumvent this Court's orders and inherent authority through the use of clandestine, undercover operators ("UCO") paid as contract employees.

14.     If the Court were to deny intervention, Goodman would suffer undue prejudice in that the Court would be allowing U.S. Government contractors to circumvent the Court's own ruling, undermining its inherent authority before the Supreme Court rules on related decisions.

15.     Above all else, this case presents unique and unusual circumstances favorable toward granting intervention. Goodman will provide unimpeachable evidence that the very same agencies this Court intended to enjoin have used clandestine methods and UCO contract employees to circumvent orders and censor citizens in violation of their first amendment rights.

### BACKGROUND

16.     Intervenor applicant Goodman is an investigative journalist, talk show host and the founder of the social media brand *Crowdsource the Truth*. In or around 2016, Goodman began posting news, information, and opinion on YouTube, Twitter, Facebook and other publicly available social media platforms.

17.     David George Sweigert, ("Sweigert") is an individual who has initiated and or insinuated himself into something near two dozen legal actions against Goodman since 2017.

18.     Goodman and Sweigert have never met and have no prior business or personal relationship whatsoever.  Shortly after Goodman began broadcasting documentaries, news, opinions, and investigative journalism on various social media platforms, Sweigert publicly announced his plans to sue Goodman "for the rest of his life."  Since then, Sweigert has continuously demonstrated his commitment to that plan.

19.     Sweigert is a professional hacker and full-time practitioner of ("Lawfare").  Sweigert is author of *The Ethical Hacker's Field Operations Guide: Learning the Art of Penetration Testing*, (https://www.amazon.com/Ethical-Hackers-Field-Operations-Guide/dp/1517763096/ref=sr_1_4?crid=2G7KR63CS38SC&keywords=ethical+hackers+field+s weigert&qid=1700670601&sprefix=ethical+hackers+field+sweigert%2Caps%2C67&sr=8-4).

20.     Sweigert's hacking book teaches readers about topics including social engineering and penetration testing which involves repeatedly attacking a system until a weakness is found.

21.      Lawfare is the weaponization of the legal system and it results in legal actions being brought for ulterior purposes.  Sweigert has essentially hacked the U.S. District Courts with a six-year penetration test conducted on Goodman on behalf of the U.S. Government.

22.     Wikipedia describes Lawfare as the use of the legal system and its institutions to damage or delegitimize an opponent, or to deter an individual's usage of their legal rights.  Etymology of the term is widely attributed to retired United States Air Force Major General Charles Dunlap Jr., (*See Law and Military Interventions: Preserving Humanitarian Values in 21st Century Conflicts (29 November 2001)* https://people.duke.edu/~pfeaver/dunlap.pdf)

23.     Sweigert is an Air Force veteran who has been to law school.  He participates in a clandestine effort engaged in covert tactics calculated to allow the very same U.S. Government agencies this Court intended to enjoin, to engage in the same behavior this Court intended to enjoin them from engaging in.  Sweigert's July 4 filing is just one element of evidence.

24.     Sweigert is in regular communication with a defendant common to this action, Nina Jankowicz, ("Jankowicz").  This communication is just one element of evidence of the broader clandestine cooperation between them. (*See* Case 1:21-cv-10878-AT-JLC Dkt. 92)

25.     Goodman first interacted with Jankowicz in or around May 2022 when she became a public figure and the subject of national news after the U.S. Department of Homeland Security, ("DHS") announced the creation of the Disinformation Governance Board, ("DGB").

26.     On May 16, 2022, Goodman published a video report including allegations that Jankowicz received payments from foreign nonprofit organizations and suggesting she should be registered pursuant to 22 U.S. Code § 612, the Foreign Agents Registration Act, ("FARA"). (https://odysee.com/@Crowdsourcethetruth:d/2022-05-16-20-00-03-Live:9)

27.     The report provided further public evidence which proved British, Canadian, and Italian government subsidized non-profit organizations had made payments to a privately-owned, for-profit LLC of which Jankowicz was a member, ("Sophias Strategies LLC"). (https://web.archive.org/web/20220614202432/https://www.sophias-strategies.com/)

28.     Two days after Goodman published the video, Jankowicz resigned, and the DGB was completely dissolved.  Jankowicz' website at www.sophias-strategies.com was promptly removed from the internet and the LLC was voluntarily dissolved.  YouTube removed Goodman's video immediately and Goodman's entire YouTube channel was terminated shortly thereafter.

[PROPOSED] MEMORANDUM IN SUPPORT OF MOTION SEEKING LEAVE TO            6
INTERVENE

29.     On November 22, 2022, Sweigert sent an alarmingly conspicuous message to Jankowicz and others via Twitter alerting them that after months of taunting Goodman, avoiding service, and mocking the lawsuit, Christopher Bouzy ("Bouzy") and his Bot Sentinel Corporation ("Bot Sentinel") had been found in default in *Goodman v Bouzy*. **(EXHIBIT B)**

30.     Also extremely suspiciously, the very next day on November 23, 2022, attorney Maxwell Mishkin ("Miskin") appeared on behalf of Bouzy and Bot Sentinel. **(EXHIBIT C)**

31.     The Court and any experienced attorney are aware that white shoe firms like Ballard Spahr do not generally represent independent small business owners like Bouzy. Nearly 150 years old firms also do not normally take cases against pro se plaintiffs like Goodman. In this case, and after being alerted by Jankowicz and Sweigert, with only one day's notice, Mishkin and Ballard Spahr promptly did exactly that.

32.     It is noteworthy that Miskin had previously represented New York Times journalist Eric Lichtblau in the prosecution of Clinton Campaign attorney Michael Sussman. That trial involved former FBI General Counsel James Baker ("Baker") who later became deputy general counsel at Twitter before being fired when it was taken over and rebranded as X.com. (https://nypost.com/2022/12/06/elon-musk-fires-twitter-lawyer-james-baker-over-hunter-biden/)

### NIH HAS ATTEMPTED TO CIRCUMVENT THIS COURT'S ORDER

33.     On July 4, 2023, this Honorable Court issued an historic Ruling on a Motion for Preliminary Injunction (*See Missouri et al v. Biden et al.,* 22-cv-01213-TAD-KDM Dkt. 293). The ruling was entered on docket at or around noon and the Washington Post published a story about it at 1:07pm Eastern. (https://www.washingtonpost.com/technology/2023/07/04/biden-social-lawsuit-missouri-louisiana/)

34.    Despite it being a summer holiday, and despite his existing action against Goodman in the Eastern District of Michigan (*See* Case 1:23-cv-06881-JGK-VF), only a few hours later, at 6:22pm, Sweigert brought a new action against Goodman in the Southern District of New York, (*See Sweigert v Goodman* 1:23-cv-05875-JGK-VF) **(EXHIBIT D)**

35.    Shortly thereafter, Sweigert moved to consolidate his Michigan action into the July 4 action, (*See Sweigert v Goodman* 1:23-cv-05875-JGK Dkt. 5). The complaint was then amended to include Google and Twitter, (*See Sweigert v Goodman* 1:23-cv-05875-JGK Dkt. 13).

36.    All of these complex machinations were executed so that Sweigert could use the threat of civil action from an apparent independent citizen to coerce Google on behalf of NIH into terminating Goodman's accounts in violation of this Court's order. Without any ruling from the SDNY, and prior to counsel appearing, Sweigert engaged in ex parte communications with unknown attorneys for Google and coerced them into terminating multiple Goodman accounts in exchange for releasing them from the suit. The Goodman accounts were promptly terminated.

37.    On or around October 10, 2023, Goodman discovered a staff directory web page on NIH.gov associated with Sweigert. Goodman attempted to contact the NIH to verify the identity of this employee and left a voicemail message requesting an interview with Sweigert on or around November 15, 2023. (https://vk.com/video731682021_456239122).

38.    There was no response, however, the next day the web page changed its status and now the same URL alerts all visitors stating, "ACCESS DENIED." **(EXHIBIT E)**

39.    Goodman seeks an injunction equal to any injunction the Court may grant to Plaintiffs and further seeks to augment any such injunction such that it would prevent Sweigert or any other contract employees or agents of government agencies from interacting in any way with social media companies regarding Goodman or information posted by Goodman.

40.     Goodman's intervention will bring forth evidence of clandestine efforts by NIH, other government agencies and their agents, and their intention to circumvent this Honorable Court's rightful orders and the Constitution of the United States of America.  Granting Goodman intervention would serve justice and would expedite adjudication of these matters.

## CONCLUSION

Goodman should be granted intervention for the reasons stated herein, and for any other reasons as determined by the Court.

Dated: New York, New York December 28, 2023

Respectfully submitted,

Jason Goodman
Pro Se Intervenor Applicant
252 7th Avenue Apt 6s
New York, NY 10001
truth@crowdsourcethetruth.org
347-380-6998

# EXHIBIT G – SAMPLE OF GOODMAN'S TWEETS ABOUT PLAINTIFF



https://twitter.com/JG_CSTT/status/1724843605527777775



https://twitter.com/JG_CSTT/status/1724464902763393054



**Crowdsource The Truth** ✔
@JG_CSTT

Malicious liar and putative criminal @Adams was served yesterday in Goodman v the City of New York. New evidence presented since that filing suggests that Sharp's suspected associate David George Sweigert instructed individuals to attack me outside @X headquarters in #NYC on Nov 1, 2022. This would have been motivated by their desire to prevent me from sharing the #TwitterCoup report with @ElonMusk.

crowdsourcethetruth.substack.com/p/the-twitter-…

https://twitter.com/JG_CSTT/status/1725210827202941408

Adam Sharp is a malicious and evil individual who I allege worked with corrupt Jurist Valerie Caproni, Sweigert and others to deny me a fair trail, destroy the financial success of my business and attempt to rob me of all my resources including my home.

These evil, corrupt individuals, including but not limited to Sharp will be sued until justice is served or I am able to proceed. It is my hope that the process will reveal evidence of criminality sufficient to put Sharp and his co-conspirators on trial for treason and eventually found guilty and served the harshest available sentece.

Sharp still has an opportunity to reverse course and fix what he has done but time is running out. His failure to do that will result in total legal destruction and ultimate incarceration. I promise, I will not rest until that is achieved.

For those just joining, does anyone else find it remarkably coincidental that Sharp's father reported from inside the Dallas police station on November 22, 1963?
#Traitors #ImpeachValerieCaproni #prison

https://twitter.com/JG_CSTT/status/1725210827202941408

11