## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| D. G. Sweigert, | PRO SE |
|---|---|
| -against- | 23-cv-05875-JGK-VF |
| Jason Goodman, | Judge John G. Koeltl |
| | Related Case: 23-cv-06881-JGK-VF |

### CORRECTED PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, ECF NO. 145 FILED 06/17/24
### (APPEARING ON THE DOCKET 06/24/2024)

NOW COMES THE PRO SE PLAINTIFF to OPPOSE the motion papers filed at ECF no. 145, Motion to Dismiss, for the purposes of service appearing on the docket 6/24/2024, for which the Defendant claims to have mailed on 6/17/2024 with the federal holiday Juneteenth occurring on 6/19/2024. Signed July 7, 2024 (7/7/2024)

**D. G. SWEIGERT PRO SE PLAINTIFF, C/O**
**PMB 13339, 514 Americas Way,**
**Box Elder, SD 57719**

### CERTIFICATE OF SERVICE

A true copy of this pleading has been placed in the U.S. MAIL with First Class postage affixed addressed to Jason Goodman, 252 7th Avenue, New York, N.Y. 10001 on July 7, 2024 (7/07/2024). Signed July 7, 2024.

**D. G. SWEIGERT PRO SE PLAINTIFF, C/O PMB 13339,**
**514 Americas Way, Box Elder, SD 57719**

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................3

INTRODUCTORY STATEMENT ......................................................................................6

HISTORY OF PROCEEDINGS .........................................................................................8

CONVOLUTED MOTION TO DISMISS (MTD).............................................................10

NINA JANKOWICZ AS KEY WITNESS FOR THE PLAINTIFF ...................................11

MR. GOODMAN'S ECONOMIC ACTIVITY AND ATTACKS ON COMPETITORS ....13

PLAINTIFF'S NON-FRIVOLOUS ARGUMENT TO EXTEND LAW ............................14

CROWDSOURCE THE TRUTH FALSE AND DECEPTIVE CLAIMS ..........................16

LAW AND ARGUMENT ..................................................................................................19

CONCLUSION ..................................................................................................................23

EXHIBITS ........................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)...................................................................23

*Camel Hair Mfrs. v. Saks*, 284 F.3d 302 (1st Cir. 2002)..................................................22

*Gibbons v. Malone,* 703 F.3d 595, 599 (2d Cir. 2013) ....................................................23

*Goodman v. Bouzy*, 21 Civ. 10878 (AT) (S.D.N.Y.) .......................................................10

*Goodman v. Bouzy*, 21-CV-10878 (AT) (JLC), (S.D.N.Y. May. 8, 2023) .......................10

*Goodman v. The City of New York*, 23 Civ. 9648 (JGLC) (GWG) (S.D.N.Y.) .............12

*Johnson v. Priceline.com, Inc.,* 711 F.3d 271, 275 (2d Cir. 2013)..................................22

*Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) ..................................23

*Khalil v. Fox Corp.*, 21 Civ. 10248 (LLS) (S.D.N.Y. Aug. 16, 2022) ...........................14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392, 24 Fla. L. Weekly Supp. 623 (2014)............................................................21

*Murthy v. Missouri*, No. 23-411 ................................................................................7, 11

*N. Am. Olive Oil Ass'n* , 962 F.Supp.2d at 524..................................................................7

*N. Am. Olive Oil Assocation v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013).......22

*Nat'l Academy of Television Arts & Sciences v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, (S.D.N.Y. 2021)....................................................................................................6, 8

*Newman Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996) ...................11

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578, 586-87 (3d Cir. 2002) ..........................................................................................21

*Osmose, Inc. v. Viance, LLC* , 612 F.3d 1298, 1321 (11th Cir.2010)................................7

*Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1333 (8th Cir. 1997) ...................................22

*Samaritan Alliance, LLC v. Kentuchy (In re Samaritan Alliance, LLC)*, CASE NO. 07-50735, 8

   (Bankr. E.D. Ky. Aug. 18, 2014) ...............................................................................................9

*See In re Schlichtmann*, 375 B.R. 41, 90 (Bankr. D. Mass. 2007) ..................................................9

*Sweigert v. Multimedia Sys. Design*, No. 22-12696 (E.D. Mich.)................................................13

*Tiffany (NJ) Inc. v. eBay, Inc.*, No. 04-cv-4607 (RJS), 2010 WL 3733894, at *3 (S.D.N.Y. Sept.

   13, 2010) ...................................................................................................................................22

*Time Warner Cable*, 497 F.3d at 153................................................................................................21

*Time Warner Cable*, 497 F.3d at 158................................................................................................22

*Twombly*, 550 U.S. at 545 ................................................................................................................23

*U-Haul Int'l Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986) .....................................22

**Statutes**

15 U.S.C. § 1127..............................................................................................................................21

AMEND. I, U.S. CONST.................................................................................................................7, 18

Gen. Bus. Law  § 349......................................................................................................................19

N.Y. Gen. Bus. Law § 349(a), (g)...................................................................................................15

**Rules**

Fed. R. Civ. P. 4(m) ..........................................................................................................................8

Fed. R. Civ. Proc. Rule 11 (b)(2).....................................................................................................14

Fed. R. Civ. Proc. Rule 12(b) ...........................................................................................................9

Fed. R. Civ. Proc. Rule 4(m .............................................................................................................8

Fed. R. Civ. Proc. Rule 4(m)............................................................................................................8

Rule 11 ..................................................................................................................10

Rule 11(b)..............................................................................................................10

Rule 11(b)(2) ...........................................................................................................9

Rule 12(b)(6) ...........................................................................................................9

**Treatises**

Certified Ethical Hacker Field Operations Guide: In-depth technical how to for passing the CEH exam (CEH FOG series), https://www.amazon.com/Certified-Ethical-Hacker-Operations-depth/dp/1530111722 ..................................................................................19

How To Lose The Information War, I.B. Tauris, 2020, ISBN: 978-0-7556-4208-3 (Jankowicz)11

Impact of Health Misinformation in the Digital Information Environment in the United States Throughout the COVID–19 Pandemic Request for Information (RFI), 87 Fed. Reg. 12714 (Mar. 7, 2022) .........................................................................................................15

Information Campaigns and COVID-19 Vaccine Messaging: Applying Lessons Learned from the 2020 Election, National Governors Association, August 3, 2021......................................16

**MEMORANDUM OF LAW TO SUPPORT PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS, ECF NO. 145 FILED 06/17/24**

### INTRODUCTORY STATEMENT

1.     This litigation concerns a social media content proprietor who has intrinsically embedded the name, persona and history of the Plaintiff into almost every message of deceptive false advertising that is distributed in New York State via the Internet related to the "Crowdsource The Truth" product brand.  As this proprietor is attempting to destroy the social media business of his former roommate, he sees the roommate's brother (Plaintiff) as a justifiable proxy target.  The target (Plaintiff) should be granted standing to defend himself against this onslaught.

2.     "Crowdsource The Truth" [1] (distributing audio-visual and written content on at least twelve (12) platforms with a registered trademark) is supervised by Defendant Jason Goodman, who claims this enterprise as his business.  "Crowdsource The Truth" has the social media power to shut down a maritime port (¶ 8, Amend. Complt[2]) and drive a federal employee to quit her job (¶ 32, Amend. Complt.[3]).  All this is done in the name of gaining new paid subscribers on the Crowdsource The Truth PATREON, LLC pay-wall channel.

3.     To create sizzle to sell subscription sales on Crowdsource The Truth public Internet channels, Defendant Goodman mostly relies on the advertising message that the Plaintiff is a deep state mole working at the U.S. National Institute of Health engaged in "crimes against humanity" to extinguish millions of lives with the next hoax COVID-19 vaccination scam.

---

[1] "Multimedia System Design, Inc. d/b/a "Crowdsource the Truth" ("MSDI") produces video content that, *inter alia* , traffics in wild conspiracy theories. " *Nat'l Academy of Television Arts & Sciences v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, (S.D.N.Y. 2021)
[2] Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 4 of 81
[3] Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 11 of 81

These types of messages constitute about thirty-five (35%) to forty-five (45%) percent of Crowdsource The Truth subscriber promotions which do not enjoy AMEND. I, U.S. CONST. protection.

4.      The U.S. Government has clearly labeled this type of content as mis-information, dis-information, and mal-information MDM.  Thus, by its very nature such advertising messages that rely on MDM are deceptive on their face and violate federal and state law.

5.      It is self-evident that preventing false or misleading advertising is in the public interest. See *N. Am. Olive Oil Ass'n* , 962 F.Supp.2d at 524 (noting public interest would be "well served by ensuring that consumers do not purchase a product based on false advertising"); *Osmose, Inc. v. Viance, LLC* , 612 F.3d 1298, 1321 (11th Cir.2010) ("[T]he public interest is served by preventing customer confusion or deception.").

6.      Here is a small sample of Mr. Goodman's fact statements about Plaintiff from the operative Amended Complaint (Amend. Complt.), Plaintiff:

- Is an "undercover operative" ("UCO") working with the Federal Bureau of Invest.; and,
- Is involved in a conspiracy with U.S. District Judge Valerie E. Caproni[4], and,
- Is involved in a conspiracy with Adam Sharp[5], CEO of the EMMY Awards[6], and,
- Is involved in a conspiracy to infiltrate Twitter (X)[7], and,
- Is involved in a criminal conspiracy to obstruct First Amendment speech. (Note the U.S. Supreme Court heard an identical conspiracy theory to Mr. Goodman's "Twitter Coup" in *Murthy v. Missouri*, No. 23-411 and chose not address these claims).

---

[4] ¶ 12, Amend. Complt., Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 5 of 81
[5] "Goodman has also brought legal actions against others for the same issues – account terminations (21-cv-10627-VEC Goodman v. Sharp et al, SDNY [GOODMAN 3]).  Another Co-Defendant in GOODMAN 2 was the President and C.E.O. of the EMMY AWARDS, Adam Sharp, who Goodman had sued in a previous action, GOODMAN 3." ¶ 34, Amend. Complt. Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 13 of 81
[6] "The Plaintiff apparently committed these criminal acts at the behest of the F.B.I. and/or judge Caproni or the President of the EMMY Awards to "silence Goodman"." ¶ 19, Amend. Complt. Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 7 of 81
[7] ¶¶ 12 to 18., Amend Complt., Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 6 of 81

## HISTORY OF PROCEEDINGS

7.     The initial legal action against Defendant Jason Goodman's company, Multimedia

Systems Design, Inc., dba Crowdsource The Truth[8] was filed in the Eastern District of Michigan

(E.D.) 22-cv-12696-GAD-KGA, November 8, 2022 (Michigan case).  Frankly, had Mr.

Goodman accepted service in that action this S.D.N.Y. Court would not have any involvement in

this controversary.  It was, and remains, a Michigan question as Mr. Goodman had alleged

"fraud on the court" by the Plaintiff and a court official in a specific Michigan federal court

(Eastern District of Michigan (M.I.E.D.)).

8.     In fact, Mr. Goodman drove his car over 600 miles from New York to Michigan[9] to meet

with the Detroit Police Department[10] and the Federal Bureau of Investigation in an effort to have

the Plaintiff and the court official arrested on a social media livestream.  ¶¶ 11-12, Amend.

Complt. (ECF no. 12)[11].  "David has also committed fraud upon the court and will be going to jail

soon...", ¶ 20, Amend. Complt.[12]

---

[8] "Multimedia System Design, Inc. d/b/a "Crowdsource the Truth" ("MSDI") produces video
content that, *inter alia* , traffics in wild conspiracy theories. " *Nat'l Academy of Television Arts
& Sciences v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, (S.D.N.Y. 2021)

[9] "Goodman claims that his recurring social media announcements of his on-line criminal
investigations provide proof that the Plaintiff is guilty for filing forged court documents and
deserves a 17-year prison sentence." ¶ 23, Amend. Complt., Case 1:23-cv-05875-JGK-VF
Document 13 Filed 09/23/23 Page 8 of 81

[10] "The intentional and fraudulent misrepresentations by Defendant's 21st Century 3D enterprise,
with Goodman at the helm, include "investigations" into the background of individuals to
"expose" "Deep State" affiliations, and that such private "facts" are then vetted by the "crowd"
for substantiation and used to claim law enforcement arrests are forthcoming after Goodman files
maliciously fictitious police reports (see Detroit Police Department and Detroit F.B.I. field office
meetings)." ¶ 83, Amend. Complt., Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23
Page 34 of 81

[11] Case 1:23-cv-06881-JGK-VF Document 12 Filed 01/23/23 Page 8 of 72

[12] Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 7 of 81

9.      Only the court of upon which the fraud was perpetrated has "core jurisdiction[13]" over

such claims insofar as the fraud is committed upon the judicial machinery in Michigan and not

New York.  This S.D.N.Y. Court has questionable jurisdiction to hear such a Michigan fraud-on-

the-court case.

10.     At the time this instant case was filed (Case 1:23-cv-05875-JGK-VF) it was objectively

reasonable for the Plaintiff to believe that the Michigan lawsuit was still born or in a coma due to

service of process complications and that the lawsuit would not be moving forward.  Afterall, a

summons was issued in the Michigan case at ECF no. 20, 1/31/2023 and the Plaintiff exhausted

all service remedies over five (5) months, till ECF no. 30, 6/5/2023 (see docket sheet at

EXHIBIT A, attached).  Process servers provided statements that the building's doorman at the

Defendant's apartment said Jason Goodman moved away.

11.     As Fed. R. Civ. Proc. Rule 4(m) only provides a 90-day window for service[14] of a party,

it was reasonable for Plaintiff to assume the Michigan case would not move forward despite

diligent service attempts by Plaintiff [Exh. A].  As service was never perfected, the Michigan

case should have been dismissed pursuant to Rule 4[15], not transferred to the S.D.N.Y. on August

6, 2023 (one month after the docketing of this instant action, Case 1:23-cv-05875-JGK-VF).

---

[13] "Similarly, this Court possesses core jurisdiction over Samaritan's fraud on the court
claims. *See In re Schlichtmann*, 375 B.R. 41, 90 (Bankr. D. Mass. 2007) ("[T]his Court has core
jurisdiction over [debtor's] demand for damages for fraud on the court insofar as it concerns
fraud perpetrated in the bankruptcy court itself, in [debtor's] bankruptcy case."). " *Samaritan
Alliance, LLC v. Kentuchy (In re Samaritan Alliance, LLC)*, CASE NO. 07-50735, 8 (Bankr.
E.D. Ky. Aug. 18, 2014)

[14] Fed. R. Civ. Proc. Rule 4(m)
[15] Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is
filed, the court-on motion or on its own after notice to the plaintiff-*must* dismiss the action
without prejudice against that defendant or order that service be made within a specified
time."  Fed. R. Civ. P. 4(m) (emphasis added).

12.    Ironically, the operative Amended Complaint here (Amend. Complt., ECF no. 13, 9/12/2023) was first conceived as a Conditional Counterclaim[16] docketed by the Plaintiff when he was sued (along with ten (10) other defendants[17]) by then racketeering plaintiff Goodman; see *Goodman v. Bouzy*, 21 Civ. 10878 (AT) (S.D.N.Y.).  The ancestor of the Amend. Complt. (counterclaim document) was filed as conditional to spare the *Bouzy* court any litigation expansion and to serve as a warning to Defendant Goodman to cease his injurious conduct directed at the Plaintiff (demonstrating that the Plaintiff is not seeking to expand litigation).

| 02/09/2023 | 130 | DEFENDANT'S CONDITIONAL COUNTERCLAIM AGAINST JASON GOODMAN(COUNTER DEFENDANT).Document filed by David George Sweigert.(sc) (Entered: 02/09/2023) |
|---|---|---|

## CONVOLUTED MOTION TO DISMISS (MTD)

13.    The Defendant invokes both Fed. R. Civ. Proc. Rule 12(b) and Rule 11(b)(2) Def's. MtD, ECF no. 145[18] but has failed to provide proper evidentiary support for his Rule 12(b)(6) motion, or Rule 11(b)(2).  The entirety of the exhibits in the Defendant's MtD papers are extraneousness

---

[16] Case 1:21-cv-10878-AT-JLC Document 130 Filed 02/09/23 Page 1 of 75

[17] "Jason Goodman ("Goodman"), proceeding *pro se*, brought this action against Christopher Ellis Bouzy ("Bouzy"), Bot Sentinel, Inc. ("Bot Sentinel"), George Webb Sweigert ("Webb"), David George Sweigert ("Sweigert"), Benjamin Wittes ("Wittes"), Nina Jankowicz ("Jankowicz"), Adam Sharp ("Sharp"), Margaret Esquenet ("Esquenet"), the Academy of Television Arts and Sciences ("ATAS"), Seth Berlin ("Berlin"), and Maxwell Mishkin ("Mishkin") alleging multiple claims."    *Goodman v. Bouzy*, 21-CV-10878 (AT) (JLC), (S.D.N.Y. May. 8, 2023)

[18] "The Amended Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim, Rule 11(b)(2) for being presented for improper purposes, and for abuse of process". Case 1:23-cv-05875-JGK-VF Document 145 Filed 06/17/24 Page 3 of 39

and well outside the scope of the four-corners[19] of the motion to dismiss analysis for the Amend. Complt. (ECF. No. 13)

14.     Instead, Defendant editorializes in several irrelevant paragraphs on the Port of Charleston dirty bomb hoax, his roommate George Webb Sweigert and includes a twenty (20) page U.S. Coast Guard report in his papers at EXHIBIT A[20] (pages 2-3, MtD, ECF no. 145)[21].  Goodman also advances an "abuse of process claim" he may have against the Plaintiff, but he has yet to file any counterclaims.  The MtD is also vague and ambiguous, especially at page 5, "Failure to State a Claim for Other Torts" which provides a litany of conclusory statements.  Nonetheless, the allegations must be taken as true and all references to external sources in the Amend. Complt. have to be considered.  In re *Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 176 (2d Cir. 2013); see *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010).

15.     Additionally, Defendant has the burden of objectively demonstrating a violation of Rule 11.  Defendant, however, has provided no factual support for his contention that Plaintiff violated Rule 11(b) only subjective speculation concerning lawful Freedom of Information Act letters (his exhibits).

**NINA JANKOWICZ AS KEY WITNESS FOR THE PLAINTIFF**

16.     As relevant here, *pro se* Plaintiff's *Bouzy* co-defendant was former U.S. Department of Homeland Security employee Nina Jankowicz, a defendant in both *Goodman v. Bouzy* and *Murthy v. Missouri*, No. 23-411 (decided 6/26/2024 decided by the U.S. Supreme Court).

---

[19] "The district court improperly relied upon information outside of the four corners of NS's complaint, and failed to read the allegations in Count One of the complaint in the light most favorable to NS when granting Asplundh's Rule 12(b)(6) motion" *Newman Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996)
[20] Case 1:23-cv-05875-JGK-VF Document 145 Filed 06/17/24 Page 9 of 39
[21] Case 1:23-cv-05875-JGK-VF Document 145 Filed 06/17/24 Page 1 of 39

*Murthy v. Missouri* speaks to the heart of para.s 12 to 18, Amend. Complt[22] which describe the Defendant's "Twitter Coup" manifesto.  In his manifesto, Mr. Goodman claims that government agents working with District Judge Valerie E. Caproni are communicating with Twitter, YouTube, and other social media to censor Mr. Goodman.

17.     In fact, these paragraphs (¶¶ 12 to 18) were ratified by Mr. Goodman's initiation of another lawsuit against the City of New York and Twitter (X) for the allegations described in ¶¶ 12 to 18 ("Twitter Coup"), an indication that the Amend. Complt. is grounded in fact. *Goodman v. The City of New York*, 23 Civ. 9648 (JGLC) (GWG) (S.D.N.Y.).

18.     Ms. Jankowicz is a pivotal character in this action as a social media expert and potential witness.  The Court may want to take judicial notice that Ms. Jankowicz is the author of the book How To Lose The Information War, I.B. Tauris, 2020, ISBN: 978-0-7556-4208-3 (Jankowicz).

19.     Miss Jankowicz ultimately had to obtain a civil restraining order[23] that forbade Defendant Goodman from speaking of her[24] – in any way – to his social media followers (purportedly for death threats made against her infant newborn, or publication of her private address on his PATREON, LLC pay-per-view channel, Amend. Complt., ¶ 32,33, ECF no. 13)[25].  This is **extreme and outrageous** conduct on the part of Mr. Goodman's Crowdsource The Truth business.

20.     The phenomenon of Defendant Goodman harnessing the powers of social media attacks, or crowd-stalking, is "socially malevolent", extreme and outrageous.  This is an element of the

---

[22] Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 5 of 81
[23] See Arlington General District Court, Virginia.  Case 1:23-cv-05875-JGK-VF Document 148 Filed 06/30/24 Page 2 of 4
[24] ¶ 32, Amend. Complt., Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 11 of 81
[25] Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 12 of 81.

Plaintiff's Negligent Infliction of Emotional Distress (N.I.E.D.) claim, ¶ 103, Amend. Complt[26]. As with Jankowicz, the Defendant was successful in causing the Plaintiff to fear of his personal safety as a direct and proximate result of Mr. Goodman's appeals for calls to action ("Cyber Militia").

21.    It is completely plausible to assume the Defendant will continue his Jankowicz-like social media attacks under the cloak of "advertising" well into the future.  Protection is warranted from such social media extremists like Goodman, who willfully fixates on anyone who disagrees with his brand of "truth" and then becomes hell-bent on destroying their personal autonomy and agency (like Nina Jankowicz) with a myriad of very public unprivileged luring false fact statements made in a deceptive advertising context to bait the public.  ¶ 111, Amend. Complt.[27]

22.    For a more detailed explanation of the Nina Jankowicz social media harassment by Goodman see the Michigan lawsuit *Sweigert v. Multimedia Sys. Design*, No. 22-12696 (E.D. Mich.), Amend. Complt. ¶ 13, pg. 8-11.

### MR. GOODMAN'S ECONOMIC ACTIVITY AND ATTACKS ON COMPETITORS

23.    Restraining orders like the one described above, as well as others, demonstrate that the benevolent and journalistic sounding "Crowdsource The Truth", with its cyber lynch-mob call-

---

[26] "That the conduct of the Defendant's CSTT enterprise (each of them) were in reckless disregard to the probability that Plaintiff would suffer emotional distress, and that the Defendant's CSTT enterprise (each of them) intended to cause emotional; distress with his outrageous conduct which was a substantial factor in causing Plaintiff's severe emotional distress."  Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 38 of 81

[27] "These false misrepresentations are designed to deceive the public at large in New York, as a reasonable consumer would assume that fact-checking and vetting is taking place as advertised. In the mind of a reasonable New York consumer CrowdSource The Truth is a fact checking truth engine that relies on the crowd to vet facts." Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 40 of 81

to-action powers, (e.g. "Cyber Militia") has the ability to impact members of the public by instilling within them with anxiety and fear of becoming a social media target[28].  The end-game of this "Crowdsourcing" or disinformation (disinfo)[29] advertising on public Internet channels, is to obtain paid subscriptions from the citizens of New York State that believe in deep state cabal¶ 63, Amend. Complt.[30]

24.    This is Jason Goodman's "business", to publicly advertise how to gain access to the PATREON, LLC peep show that provides false and misleading reports of the deep state cabal (to which the Plaintiff is falsely claimed to be a member).  All Mr. Goodman's public advertising activity is done for the purposes of soliciting subscribers to his private social media club, resembling an Internet conspiracy-laden speak easy with a cover charge (Mr. Goodman's *economic activity*).  The bulk (35% to 45%) of Mr. Goodman's social media advertising orbits this type of content (to sell subscriptions on PATREON, LLC, ¶¶ 6, 23, 46, 63, 82 and 83, Amend. Complt.[31]), namely that the Plaintiff is a deep state mole censoring Goodman.  A by-product of these public announcements is to trash, smear, slander and injure the reputation of social media competitors that are approved Crowdsource The Truth targets, like George Webb Sweigert.

**PLAINTIFF'S NON-FRIVOLOUS ARGUMENT TO EXTEND LAW**

---

[28] See THIRD CAUSE OF ACTION Reckless Infliction of Emotional Distress -- Against Defendant, Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 38 of 81
[29] "Disinformation" is a legal term discussed in dozens of federal actions in this district.  *Khalil v. Fox Corp.*, 21 Civ. 10248 (LLS) (S.D.N.Y. Aug. 16, 2022) ("Powell used the disinformation campaign she operated through and with Fox and Dobbs to solicit money from individuals and corporations - including those located in New York, New York -for contributions to her so-called "legal defense" fund and Super PAC").

[30] General description at Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 25 of 81
[31]  Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 33 of 81

25.    Social media may be privately owned, but it is powerful and has arguably become a public conveyance like the broadcasting spectrum, telephone lines and the Internet itself.  To this end, the Plaintiff is pursuing "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[32]" to protect himself and the public from the practical effects of mis-information, dis-information and mal-information (MDM[33]), that has (in this case) been baked-in to deceptive advertising as distributed by "Crowdsource the Truth".

26.    As discussed in Plaintiff's Motion for a Permanent Injunction, ECF. 130, 4/15/2024 Plaintiff is a de facto proxy of his brother George Webb Sweigert (aka "George Webb"), Mr. Goodman's former roommate and social media competitor, quoting ECF no. 130 in relevant part:

> "Goodman has continually identified the Plaintiff as a surrogate and/or proxy working and collaborating with Webb. Goodman's primary objective is to destroy the social media business of his rival competitor Webb and his secondary objective is to destroy the professional services and publishing economic activities of the Plaintiff. Goodman is acting substantially out of economic motivation when making such disparaging statements. Goodman has injured the commercial reputation and goodwill of the Plaintiff with this false advertising."  ¶ 8, Motion for Injunction, ECF no. 130.[34]

27.    Although there is currently no private right of action under Section 5 of the Federal Trade Commission Act, courts are empowered to evaluate misconduct in the sphere of deceptive advertising that violates such act, as well as New York's "mini-FTC Act"[35] (which does have a

---

[32] Fed. R. Civ. Proc. Rule 11 (b)(2) ,  "(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;"

[33] Cybersecurity and Infrastructure Security Administration, https://www.cisa.gov/sites/default/files/publications/mdm-incident-response-guide_508.pdf

[34] Case 1:23-cv-05875-JGK-VF Document 130 Filed 04/15/24 Page 7 of 12

[35] Such law which makes unlawful " [d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a), (g). To

private right of action). In fact, the courts have been permitted to ban future deceptive

advertising[36] of this nature. Especially advertising, like the Defendant's, that has contained

COVID-19 vaccine[37] and 2020 stolen election MDM.

## CROWDSOURCE THE TRUTH FALSE AND DECEPTIVE CLAIMS

28.     The crux of the false advertising claim is found at para. 112 in the Amend. Complt.[38]

| |
|---|
| FIFTH CAUSE OF ACTION<br>False Advertising – Against Defendant<br>Violations of Lanham Act, 11 U.S.C. § 1125(a). Section 1125(a)<br>Violations of General Business Law § 350: False advertising unlawful<br><br>*About Crowdsource The Truth Crowdsource The Truth is an Open Source Fact Checking "Truth Engine" and political social media movement.* |

29.     The above statement is tangible (*Fact Checking "Truth Engine"*) and a deceptive

falsehood. Crowdsource The Truth is a social media vehicle for Defendant Goodman to settle

personal scores by pushing factually incorrect, fraudulent and misleading information, deceiving

New York State consumers and injuring his victims. It is not Factcheck.org[39] or SNOPES.com[40].

---

succeed under the New York statute, a claimant must show that an injury resulted to consumers
or the general public. See New York v. Feldman, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002).

[36] "Similarly, in *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979), the
Supreme Court held that a complaint alleges an Article III injury-in-fact where fear of future
injury is not "imaginary or wholly speculative." *State of Mo. v. Biden*, 3:22-CV-01213, 141
(W.D. La. Jul. 4, 2023), *rev'd in part on other grounds*, 83 F.4th 350 (5th Cir. 2023).
[37] Impact of Health Misinformation in the Digital Information Environment in the United States
Throughout the COVID–19 Pandemic Request for Information (RFI), 87 Fed. Reg. 12714 (Mar.
7, 2022)

[38] Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 40 of 81
[39] FactCheck.org is a project of the Annenberg Public Policy Center of the University of
Pennsylvania. The APPC was established by publisher and philanthropist Walter Annenberg to
create a community of scholars within the University of Pennsylvania that would address public
policy issues at the local, state and federal levels.  https://www.factcheck.org/about/our-mission/
[40] "Snopes is a member of IFCN and in compliance with the International Fact Checking
Network's highest standards of combating misinformation online. Should you need to file a
complaint with IFCN, you may do so here but please contact us directly".  www.snopes.com

Legitimate crowdsourcing draws on the expertise of large numbers of people to discern facts.

Mr. Goodman's Internet peep-show does none of this. Nonetheless, consumers are deceived into

believing that Mr. Goodman's MDM has indeed been fact-checked. As stated in the Amend.

Complt at ¶ 45[41]:

> ""Crowdsourcing" is misused by Goodman to create the false representation that there is
> some kind of editorial process at work. There isn't. Goodman's non-existent
> "crowdsource" editorial process provides no actual vetting. The phrase is used by
> Goodman as a cloak to his intent and motives to recklessly publish false statements will
> [sic with **actual malice**." ("actual malice" is mentioned eleven (11) times in the Amend.
> Complt.)

30.   Thus, in this context, the Defendant is a for-profit false advertiser spreading MDM[42] in

New York State while engaged in open-ended for-profit disinfo advertising and dehumanizing

smear campaigns[43], which makes it is virtually impossible for merely one legal action to

---

[41] Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 16 of 81

[42] "Misinformation, Disinformation, Malinformation and the COVID-19 Vaccine False
information campaigns, including misinformation, disinformation and malinformation (MDM),
exploit the emotional nature of societal issues, influence public opinion, sow social discord and
erode trust in public institutions. Misinformation refers to false information shared inadvertently
or without harmful intent; disinformation refers to the deliberate creation of inaccurate
information for malicious purposes; and malinformation refers to the use of facts deliberately out
of context with an intent to mislead.  2 fn
(https://www.cisa.gov/sites/default/files/publications/SLTTCOVIDToolkit_FINAL_508.pdf)
While misinformation may be inadvertent, disinformation and malinformation campaigns seek to
mislead or manipulate their targets on a particular issue. Information campaigns have historically
been associated with vaccine hesitancy. "
Information Campaigns and COVID-19 Vaccine Messaging: Applying Lessons Learned from
the 2020 Election, National Governors Association, August 3, 2021,
https://www.nga.org/publications/information-campaigns-and-covid-19-vaccine-messaging-
applying-lessons-learned-from-the-2020-election/
[43] Plaintiffs focus on the statements that Daleiden and his associates "manufacture[d] a fake
smear campaign against Planned Parenthood" and "created a false smear campaign against
Planned Parenthood." *See* App'x 5.8 (initial bracket retained, all other alterations omitted). *Ctr.
for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F.Supp.3d 320, 328 (S.D.N.Y.

encompass the breadth of the Defendant's multi-State weaponized monopolistic multi-platform social media business[44].

31.    Although, the Defendant claims First Amendment immunity for his unfair and deceptive disinfo advertising, the courts have ruled in many actions that AMEND. I, U.S. CONST. provides no such defense or waiver[45].

32.    In sum, this action represents a small attempt to protect the Plaintiff and the public (as articulated in federal[46] and state laws[47]) from MDM designed to cause injury to reputations, financial losses, emotional distress and the defrauding of the public in New York State, and to recover such damages for N.I.E.D. injuries that a jury may award. ¶ 67, Amend. Complt.[48]

---

2021) (quoting N.Y. Civ. Rights Law § 74); *see Kinsey*, 991 F.3d at 176. We agree.*Daleiden v. Planned Parenthood Fed'n of Am.*, 21-2068-cv, 3 (2d Cir. Apr. 5, 2022)

[44] "To raise money from unsuspecting New York consumers Goodman uses a two staged approach. There is a (a) public advertising component which redirects viewers to pay-for-view social media sites and (b) the private pay-for-view Internet accessible web-site open to viewers user authentication fee is paid (see subscriber / membership basis). The broadcasts to the public (stage one) serve as a solicitations and advertising (false advertising) acting as promotional device (analogous to a book cover or book wrapper), while the for-profit subscriber content is private (stage two) (analogous to viewing the actual book content), only available to a viewer after a recurring credit card payment schedule is established (e.g. $10.00 a month)." ¶ 67, Amend. Complt., Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 26 of 81
[45] "Advertising that is false, deceptive, or misleading of course is subject to restraint. See *Virginia Pharmacy Board v. Virginia Citizens Council*, 425 U.S. at 771-772 [ 96 S.Ct. 1817] and n. 24 " *National Com'n on Egg Nutrition v. F.T.C.*, 570 F.2d 157, 162 (7th Cir. 1977)

[46] ("see also Fed. Trade Comm'n v. 1263523 Ontario, Inc., 205 F. Supp. 2d 205, 209 (S.D.N.Y. 2002) ("Misrepresentations of material facts made to induce the purchase of goods or services constitute unfair or deceptive acts or practices and are prohibited by Section 5(a) of the FTC Act.")." *Rubin v. Mastercard International, LLC*, 342 F. Supp. 2d 217, 220 (S.D.N.Y. 2004). See Sixth Cause of Action, Amend. Compt, ECF no. 13, 9/23/2023, pg. 43.
[47] "Defendants' alleged multi-media dissemination of information to the public is precisely the sort of consumer-oriented conduct that is targeted by General Business Law §§ 349 and 350 (Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25)." *Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 293 (N.Y. 1999).  See Sixth Cause of Action, Amend. Compt, ECF no. 13, 9/23/2023, pg. 43.
[48] Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 25 of 81

## LAW AND ARGUMENT

33.    "[T]o state a claim under New York's "mini-FTC Act", Gen. Bus. Law § 349, a plaintiff must allege that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam).

34.    The Plaintiff has done this in the Amend. Complt. (ECF no. 13).  Hundreds, if not thousands, of Internet visitors to Mr. Goodman's peep show have believed the claims *"Crowdsource The Truth is an Open Source Fact Checking "Truth Engine"[49]"*  Thus they believe the fact that the Plaintiff is a deep-state mole has been "fact checked".

35.    As stated in the Mot. Injunc. (ECF no. 130), herein relied upon for supplemental authorities:

> "The Plaintiff, while not in his own person a competitor of Goodman's alleged rogue enterprise, is and was, nonetheless, so situated that he could reasonably be regarded as a surrogate for such a competitor [Webb] and impacted by the profit driven disinformation campaigns."[50]

36.    Just like with Jankowicz, the Plaintiff suffers the emotional anxiety[51] and fear over his physical safety because of Mr. Goodman's cyber mob, who believe to be justified in harassing Crowdsource The Truth approved targets and accept the false claims made about the Plaintiff and Jankowicz, which they assume have been "fact-checked" by a "truth engine". ¶ 112, Amend. Complt.[52]

---

[49] FIFTH CAUSE OF ACTION False Advertising – Against Defendant, Amend. Complt.

[50] Case 1:23-cv-05875-JGK-VF Document 130 Filed 04/15/24 Page 9 of 12

[51] "Goodman publishes damaging remarks about the Plaintiff and his abilities as a Certified Ethical Hacker, stating that Plaintiff is unfit for such a position as well as conduct rising to the level of criminality."  ¶ 76, Amend. Complt., Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 31 of 81

[52] Case 1:23-cv-05875-JGK-VF Document 13 Filed 09/23/23 Page 40 of 81

37.     For the purposes of 15 U.S.C. § 1127 and 15 U.S.C. § 1125(a) (herein collectively "the Lanham Act") Goodman and his former roommate and co-anchor George Webb Sweigert ("Webb") are direct competitor rivals that label themselves as "investigative journalists", although both place into interstate telecommunications platforms extremist conspiracy theories and disinformation.

38.     In these public productions, with no factual basis to make such a claim other than the two are brothers, Goodman continually identifies the Plaintiff as a colleague, co-worker, criminal co-conspirator, partner, surrogate and/or proxy working and collaborating with Webb and Webb's social media business.  Thus, for the purpose of the Lanham Act, Goodman's confabulation of the two brothers represents a rival competing enterprise in Goodman's mind.  His intent is to discredit, injure and harm such a rival.  To this end, Goodman is acting substantially out of economic motivation when making such deceptive (zero-fact) statements to disparage his rival competitors, which have injured the commercial reputation and goodwill of the Plaintiff.

39.     Goodman promotes the falsehood that the Plaintiff is an employee of the U.S. National Institute of Health (N.I.H.) tasked to destroy Goodman's "business" because of Goodman's reporting of the COVID-19 pandemic.

40.     Goodman widely disseminates statements that the Plaintiff assisted in the creation of forged court documents (as the Plaintiff authored a computer networking technical manual[53]) and used his technical abilities to create a PDF document "forgery" (untrue) in a Detroit, Michigan federal court (untrue).  Said technical manual does not even contain the words "PDF" and

---

[53] Certified Ethical Hacker Field Operations Guide: In-depth technical how to for passing the CEH exam (CEH FOG series), https://www.amazon.com/Certified-Ethical-Hacker-Operations-depth/dp/1530111722

certainly does not describe how to create a forged PDF document (see accompanying declaration).

41.     Although Plaintiff is not in direct competition with Defendant, Plaintiff has the requisite commercial or competitive interest to bring a false advertising claim against Crowdsource The Truth™ under the Lanham Act (commercial zone of interest).

42.     The Plaintiff, while not in his own person a competitor of Goodman's Crowdsource The Truth™ enterprise, is and was, nonetheless, so situated that he could reasonably be regarded as a practical surrogate (partner, collaborator, colleague, associate, etc.).

43.     The Plaintiff need not be a direct competitor of Goodman to seek protection under the Lanham Act.  In 2014 the Supreme Court established a new test requiring a plaintiff suing for false advertising under 15 U.S.C. § 1125(a) to (1) allege an injury to a commercial interest in reputation or sales; and (2) show that such injury was proximately caused by defendant's misrepresentations.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392, 24 Fla. L. Weekly Supp. 623 (2014), quoting in relevant part:

> "[P]rotect[ing] persons engaged in [commerce within the control of Congress] against unfair competition," 15 U.S.C. § 1127; and "unfair competition" was understood at common law to be concerned with injuries to business reputation and present and future sales. Thus, to come within the zone of interests in a §1125(a) false-advertising suit, a plaintiff must allege an injury to a commercial interest in reputation or sales. Pp. 129-132, 188 L. Ed. 2d, at 405-406."

44.     Goodman's social media disinformation campaigns are (i) "literally false" and/or (ii) impliedly false such that "while not literally false, [it] is nevertheless likely to mislead or confuse customers." *Time Warner Cable*, 497 F.3d at 153.  See also *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578, 586-87 (3d Cir. 2002) ("A literally false message may be either explicit or conveyed by necessary implication when,

considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." (internal quotation marks omitted)).

45.    An advertisement is false by necessary implication if "the words or images, considered in context, necessarily imply a false message." *Time Warner Cable*, 497 F.3d at 158; see also *Tiffany (NJ) Inc. v. eBay, Inc.*, No. 04-cv-4607 (RJS), 2010 WL 3733894, at *3 (S.D.N.Y. Sept. 13, 2010) ("This common-sense doctrine allows a court to conclude that, while no individual statement in an advertisement is false, taken as a whole, the advertisement necessarily implies a falsehood.").

46.    Goodman and the Crowdsource The Truth™ enterprise continuously act with the intent to dupe consumers in the manner described above and therefore consumers have been deceived. *Camel Hair Mfrs. v. Saks*, 284 F.3d 302 (1st Cir. 2002) ("It is well established that if there is proof that a defendant intentionally set out to deceive or mislead consumers, a presumption arises that customers in fact have been deceived"). *Camel Hair v. Saks* relied on by *N. Am. Olive Oil Association v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013).

47.    Goodman must now defend his zero-fact statements, as it is presumed, Goodman has misled consumers.  See *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1333 (8th Cir. 1997) (approving of a presumption of consumer deception upon a finding that defendant acted deliberately to deceive); see also *U-Haul Int'l Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986).

48.    "[A] complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.,* 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007))

49.    A complaint need not "contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd*., 751 F.3d 64, 70 (2d Cir. 2014).

50.    On a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Gibbons v. Malone,* 703 F.3d 595, 599 (2d Cir. 2013) "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. A court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss styled papers at ECF no. 145 should be denied. Defendant has not met his burden and provided no relevant evidence in his motion papers that are germane to this analysis.

In the event the Court does find an issue with the Plaintiff's Amended Complaint (ECF no. 13), he respectfully requests this Court allow him to submit a further particularized pleading (Second Amended Complaint) that includes further details infractions on the part of the Defendant and claims with theories of recover.

The undersigned is certifying that this document (i) is not being submitted for an improper purpose such as to harass someone; (ii) the legal arguments have a basis under existing law or there is a good-faith basis to change the law or create new law; (iii) the facts are supported by evidence or will be supported by evidence; and (iv) denials of any facts are supported by evidence or will be supported by evidence.

Signed July 7, 2024. (7/07/2024)

**D. G. SWEIGERT PRO SE PLAINTIFF, C/O**
**PMB 13339, 514 Americas Way,**
**Box Elder, SD 57719**

# EXHIBITS

**EXHIBIT A**

<sup>1</sup>

| 01/31/2023 | 21 | SUMMONS Issued for *George Webb Sweigert* (SSch) (Entered: 01/31/2023) |
|---|---|---|
| 01/31/2023 | 22 | Summonses Provided to Plaintiff(s) for Service (SSch) (Entered: 01/31/2023) |
| 02/07/2023 | 23 | MOTION for Extension of 30 days to serve Defendant Corporation by D.G. Sweigert. [Submitted through Pro Se Portal 2/7/23] (SSch) (Entered: |
| 02/17/2023 | 24 | ORDER Granting 23 Motion for Extension of Service. Signed by District Judge Gershwin A. Drain. (TMcg) (Entered: 02/17/2023) |
| 02/17/2023 | | TEXT-ONLY CERTIFICATE OF SERVICE re 24 Order on Motion to Extend on D.G. Sweigert at PMB 13339, 514 Americas Way, Box, Elder, SD 57719. (TMcg) (Entered: 02/17/2023) |
| 02/22/2023 | 25 | MOTION for Alternate Service by D.G. Sweigert. [Submitted through Pro Se Portal] (SSch) (Entered: 02/24/2023) |
| 03/20/2023 | 26 | MOTION for Declaration of Constructive Service by the Court by D.G. Sweigert. [Submitted through Pro Se Portal] (SSch) (Entered: 03/20/2023) |
| 03/21/2023 | 27 | SUPPLEMENTAL Verified re 26 MOTION for Declaration of Constructive Service by the Court filed by D.G. Sweigert. [Submitted through Pro Se Portal] (SSch) (Entered: |
| 04/10/2023 | 28 | SUPPLEMENTAL re 26 MOTION for Declaration of Constructive Service by the Court filed by D.G. Sweigert. [Submitted through pro se portal] (SSch) (Entered: 04/10/2023) |
| 05/15/2023 | 29 | MOTION for Leave of Court to Take Judicial Notice About Actions Involving Defendants by D.G. Sweigert. [Submitted through Pro Se Portal] (JOwe) (Entered: 05/15/2023) |
| 06/05/2023 | 30 | MOTION for Leave of Court to take judicial notice about actions involving defendants by D.G. Sweigert. (Pro se upload) (TTho) (Entered: 06/05/2023) |