UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D. G. Sweigert,<br><br>-against-<br><br>Jason Goodman, | PRO SE<br><br>23-cv-05875-JGK-VF<br><br>Judge John G. Koeltl<br><br>Related Case: 23-cv-06881-JGK-VF |

**[CORRECTED]**
**PLAINTIFF'S MOTION FOR TEMPORARY AND PERMANENT INJUNCTION**
**AGAINST THE DEFENDANT PURSUANT TO SECTION 1127**
**OF THE LANHAM ACT**

NOW COMES THE PRO SE PLAINTIFF to seek a temporary injunction to restrain Defendant Jason Goodman's continual social media broadcasts that the Plaintiff is a criminal, has violated criminal statues, has filed forged documents in sister courts, etc.

Signed April 14, 2024 (4/14/2024)

D. G. SWEIGERT PRO SE PLAINTIFF, C/O
PMB 13339, 514 Americas Way,
Box Elder, SD 57719

**CERTIFICATE OF SERVICE**

Copy of this pleading has been placed in the U.S. MAIL addressed to Jason Goodman, 252 7th Avenue, New York, N.Y. 10001 on April 14, 2024 (4/14/2024). Signed April 14, 2024 (4/14/2024)

D. G. SWEIGERT PRO SE PLAINTIFF, C/O PMB 13339,
514 Americas Way, Box Elder, SD 57719

1

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................................3

**INTRODUCTION** ...................................................................................................................5

**LAW AND ARGUMENT** .....................................................................................................10

**RELIEF REQUESTED** .........................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Goodman v. Bouzy*, 21 Civ. 10878 (AT) (JLC) (S.D.N.Y. Feb. 21, 2024)...................................6

*Goodman v. The City of New York*, 23-CV-9648 (JGLC) ............................................................6

*Khalil v. Fox Corp.*, 21 Civ. 10248 (LLS) (S.D.N.Y. Aug. 16, 2022) ........................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392, 24 Fla. L. Weekly Supp. 623 (2014)................................................................9

*McNeilab, Inc. v. American Home Prods. Corp.,* 501 F.Supp. 517, 529 (S.D.N.Y. 1980) (..........9

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578, 586-87 (3d Cir. 2002) ...................................................................................................10

*Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*, 926 F.2d 134, 140 (2d Cir. 1991)...................................................................................................................9

*Tiffany (NJ) Inc. v. eBay, Inc.*, No. 04-cv-4607 (RJS), 2010 WL 3733894, at *3 (S.D.N.Y. Sept. 13, 2010) ................................................................................................................10

*Time Warner Cable*, 497 F.3d at 153................................................................................10

*Time Warner Cable*, 497 F.3d at 158................................................................................10

*Time Warner Cable, Inc. v. DIRECTV, Inc.,* No. 07-0468-cv, 2007 WL 2263932 (2d Cir. Aug. 9, 2007)................................................................................................................9

**Statutes**

§ 1125(a)(1)(B)................................................................................................................6

15 U.S.C. § 1125(a) ....................................................................................................4, 9

15 U.S.C. § 1127..................................................................................................................4, 9

Lanham Act ........................................................................................................................4, 9

**Treatises**

Certified Ethical Hacker Field Operations Guide: In-depth technical how to for passing the CEH exam (CEH FOG series), https://www.amazon.com/Certified-Ethical-Hacker-Operations-depth/dp/1530111722 ...........................................................................................................7

## MEMORANDUM OF LAW TO SUPPORT
## PLAINTIFF'S MOTION FOR TEMPORARY AND PERMANENT INJUNCTION
## AGAINST THE DEFENDANT PURSUANT TO SECTION 1127
## OF THE LANHAM ACT

There is an accompanying EXHIBITS ANNEX and DECLARATION filed concurrently with this pleading.

### INTRODUCTION

1.   The Lanham Act *pro se* Plaintiff submits this request for a temporary and permanent injunction pursuant to 15 U.S.C. § 1127 and 15 U.S.C. § 1125(a) following the publication of YouTube.com video content published by the Defendant on April 14, 2024.

2.   The focus of this request rests on four individuals: (1) Defendant Jason Goodman [herein Goodman], (2) non-party George Webb Sweigert [herein Webb] (a former Goodman associate), (3) non-party John Cullen [herein Cullen] (Goodman's replacement of Webb as co-anchor), and (4) Plaintiff D. George Sweigert [herein Plaintiff].

3.   For the purposes of 15 U.S.C. § 1127 and 15 U.S.C. § 1125(a) (herein collectively "the Lanham Act") Goodman and Webb are direct competitor rivals that label themselves as "investigative journalists", although both place into interstate telecommunications platforms extremist conspiracy theories and disinformation.  Both distribute video livestreams, podcasts, blog posts and maintain web-sites.  For example, on Twitter Webb operates @RealGeorgeWebb1 while Goodman operates @JG_CSTT and @GHenryDickface.

4.   Both Webb/Goodman attack each other on nearly a daily basis regarding the character of information distributed on social media by the opposing competitor.  Both accuse each other of pushing lies, falsehoods and misinformation (collectively known as "disinformation") in their

5

respective social media productions. Both accuse each other of criminal activity and profit from their disinformation campaigns on social media.

5. Webb lived in Goodman's apartment for at least four (4) months in 2017 and assisted Goodman in establishing the so-called "Crowdsource The Truth" channels (Twitter.com, YouTube.com, PATREON.com, etc.). The Court will recall that both profited immensely when the pair were cited in at least twenty (20) mainstream news articles concerning the closure of the Port of Charleston, South Carolina for a "dirty bomb hoax" on June 14, 2017, when both communicated to the U.S. Coast Guard that the Motor Vessel Memphis Maersk had carried a dirty bomb onboard when it entered mooring facilities to offload containers causing a public panic.

6. As the Court is familiar, Goodman receives income for his pay-per-view podcasts on the PATREON.com pay-wall content provider (as well as Odysee.com, SubScribeStar.com, SubStack.com, etc.). Webb also received pecuniary benefits from PATREON until January 2021, when Goodman was apparently instrumental in having PATREON terminate Webb's pay-per-view account.

7. Goodman openly states that his Twitter tweets and YouTube.com podcasts are advertising vehicles to draw the attention of the general public to subscribe to his pay-per-view PATREON.com channel and other ancillary channels (SubStack.com, Odysee.com, etc.)[1]. In each and every video distributed by Goodman on YouTube.com they are numerous verbal solicitations by Goodman for the general public to visit pay-per-view sites [Exh. B]. Each video

---

[1] Each Crowdsource The Truth video contains this solicitation in the description of the video: *Sponsor Crowdsource the Truth & enjoy exclusive content on SubscribeStar, Odysee, Substack & Patreon http://www.subscribestar.com/crowdsou... https://odysee.com/@Crowdsourcethetruth https://crowdsourcethetruth.substack....* [Exh. B]

has a description box that provides Internet address links to the pay-per-view sites. Thus, these vehicles are advertising forums in the context of the Lanham Act, consequently the for-profit disinformation campaigns that attract paying customers are an instantiation of false advertising (false advertising, § 1125(a)(1)(B)).

8. Goodman has continually identified the Plaintiff as a surrogate and/or proxy working and collaborating with Webb. Goodman's primary objective is to destroy the social media business of his rival competitor Webb and his secondary objective is to destroy the professional services and publishing economic activities of the Plaintiff. Goodman is acting substantially out of economic motivation when making such disparaging statements. Goodman has injured the commercial reputation and goodwill of the Plaintiff with this false advertising.

9. For example, Goodman openly advertises his manifesto, called "The Twitter Files" [Exh. A], to promote his pay-per-view video podcasts. Goodman has sued the City of New York and Twitter concerning the release of his manifesto. *Goodman v. The City of New York*, 23-CV-9648 (JGLC) [Exh. A]. In that action Goodman asserts that the Plaintiff is working covertly in a conspiracy with the President and CEO of the Television EMMY Awards (Adam Sharp) and U.S. District Judge Valerie E. Caproni to deny Goodman "his constitutional rights". This narrative has already been debunked in the action known as *Goodman v. Bouzy*, 21 Civ. 10878 (AT) (JLC) (S.D.N.Y. Feb. 21, 2024).

10. Goodman and his new disinformation partner (that replaces Webb) John Cullen published a YouTube.com video on April 14, 2024 which provides an instructive instance of such false advertising. The video content is focused on the Webb, Sharp, Caproni, Plaintiff conspiracy as described in the so-called "Twitter Files" manifesto [Exh. B].

11.     The aforementioned video podcast is the 17th episode in a series entitled "Webb of Deception" [Exh. B].  This represents a long-range disinformation campaign directed at Webb, which includes weekly podcasts of deceptive information which is packaged to discredit Webb.  Until the April 14, 2024 podcast [Exh. B] the Plaintiff, Caproni and Sharp were rarely (if ever) mentioned.  That has all changed.  Now the "Webb of Deception" podcast series specifically targets Webb, Caproni, Sharp and the Plaintiff.

12.     Other facets of Goodman's disinformation campaign include implicating Webb's father in a Nazi conspiracy known as "Operation Paperclip", which implies Webb's father is a war criminal, although Webb's father served in the U.S. Army 37th Division during World War II in the South Pacific (Guadalcanal, Fiji Islands, Bougainville, Liberation of the Philippines, etc.).  Goodman has proclaimed that both Webb and the Plaintiff are wife swappers and share spouses (untrue).  Goodman has declared that the Plaintiff is a criminal, as is Webb, for various crimes, including the planning of the dirty bomb hoax (untrue) and docketing forged court documents in a Detroit, Michigan federal court (untrue).  Goodman widely disseminates statements that the Plaintiff assisted in the creation of forged court documents (as the Plaintiff authored a technical manual[2]) and used his technical abilities to create a PDF document "forgery" (untrue).  Goodman further promotes the falsehood that the Plaintiff is an employee of the U.S. National Institute of Health (N.I.H.) tasked to destroy Goodman's "business" [Exh. C] (untrue).  Goodman's disinformation campaign entices the general public to his pay-per-view podcasts that allegedly reveal more details of these horrendous crimes (hacking, Nazi operations, wife swapping, covert government operations and other immoral activities).

---

[2] Certified Ethical Hacker Field Operations Guide: In-depth technical how to for passing the CEH exam (CEH FOG series), https://www.amazon.com/Certified-Ethical-Hacker-Operations-depth/dp/1530111722

13. Goodman's persistent non-stop use of these advertising channels (Twitter.com, YouTube.com, Odysee.com, SubScribeStar.com, SubStack.com, PATREON.com, etc.) to disseminate disinformation campaigns is false advertising.  Although Plaintiff is not in direct competition with Defendant, Plaintiff has the requisite commercial or competitive interest to bring a false advertising claim under the Lanham Act (commercial zone of interest).

14. Goodman's disinformation false advertising has been the direct proximate cause of harms suffered by the Plaintiff.  This includes loss of business goodwill and reputational harm in Plaintiff's infrastructure protection professional writings, professional services in the realm of certified ethical hacking, and in general the area of the protection of information technology systems, which has been significantly damaged by Goodman's false advertising.

15. Goodman's well organized disinformation campaign (to include co-anchor John Cullen) has had a direct detrimental impact to the Plaintiff's area of business as the Plaintiff maintains several industry certifications that require following a moral and ethical code of ethics.  The credential of Certified Ethical Hacker[3] is only one example.

16. The Plaintiff, while not in his own person a competitor of Goodman's alleged rogue enterprise, is and was, nonetheless, so situated that he could reasonably be regarded as a surrogate for such a competitor [Webb] and impacted by the profit driven disinformation campaigns.

---

[3] The International Council of Electronic Commerce Consultants (EC-Council), Certified Ethical Hacker (CEH) program certifies professionals who are responsible for securing (or testing the security of) computer networks from a vendor-neutral perspective. A Certified Ethical Hacker understands how to look for the weaknesses and vulnerabilities in networks and/or computer systems, and, lawfully and at the request of an organization, uses the same tools as a malicious hacker. The CEH is appropriate for security officers, auditors, security professionals, site administrators, and others who may be concerned about the integrity of their organizations network infrastructure.  https://www.cool.osd.mil/army/credential/index.html?cert=ceh4310

17. Plaintiff now seeks protection, in the form of a temporary and permanent injunctive relief[4], to enjoin Goodman from continuing unfair competition and commercial slander that violates the Lanham Act.

## LAW AND ARGUMENT

18. In his feud with social media rival competitor Webb [Exh. B], Goodman makes (1) literally false statements against Webb and Plaintiff, and (2) statements that are false by implication (malicious disinformation). See *Time Warner Cable, Inc. v. DIRECTV, Inc.,* No. 07-0468-cv, 2007 WL 2263932 (2d Cir. Aug. 9, 2007).

19. The Plaintiff need not be a direct competitor of Goodman to seek protection under the Lanham Act. In 2014 the Supreme Court established a new test requiring a plaintiff suing for false advertising under 15 U.S.C. § 1125(a) to (1) allege an injury to a commercial interest in reputation or sales; and (2) show that such injury was proximately caused by defendant's misrepresentations. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392, 24 Fla. L. Weekly Supp. 623 (2014), quoting in relevant part:

> "[P]rotect[ing] persons engaged in [commerce within the control of Congress] against unfair competition," 15 U.S.C. § 1127; and "unfair competition" was understood at common law to be concerned with injuries to business reputation and present and future sales. Thus, to come within the zone of interests in a §1125(a) false-advertising suit, a plaintiff must allege an injury to a commercial interest in reputation or sales. Pp. 129-132, 188 L. Ed. 2d, at 405-406."

***Goodman's Malicious Disinformation***

---

[4] *McNeilab, Inc. v. American Home Prods. Corp.,* 501 F.Supp. 517, 529 (S.D.N.Y. 1980) (injunctive relief sought in false advertising case)." *Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*, 926 F.2d 134, 140 (2d Cir. 1991)

20.     "Disinformation" is a legal term discussed in dozens of federal actions in this district. *Khalil v. Fox Corp.*, 21 Civ. 10248 (LLS) (S.D.N.Y. Aug. 16, 2022) ("Powell used the disinformation campaign she operated through and with Fox and Dobbs to solicit money from individuals and corporations - including those located in New York, New York -for contributions to her so-called "legal defense" fund and Super PAC").

21.     Goodman's social media disinformation campaigns are (i) "literally false" and/or (ii) impliedly false such that "while not literally false, [it] is nevertheless likely to mislead or confuse customers." *Time Warner Cable*, 497 F.3d at 153.  See also *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578, 586-87 (3d Cir. 2002) ("A literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." (internal quotation marks omitted)).

22.     An advertisement is false by necessary implication if "the words or images, considered in context, necessarily imply a false message." *Time Warner Cable*, 497 F.3d at 158; see also *Tiffany (NJ) Inc. v. eBay, Inc.*, No. 04-cv-4607 (RJS), 2010 WL 3733894, at *3 (S.D.N.Y. Sept. 13, 2010) ("This common-sense doctrine allows a court to conclude that, while no individual statement in an advertisement is false, taken as a whole, the advertisement necessarily implies a falsehood.").

### *Irreparable Injury to Plaintiff's Reputation and Goodwill*

23.     This sudden shift of the "Webb of Deception" disinformation campaign to target the Plaintiff will undoubtedly cause more injury to the Plaintiff's reputation as a Certified Ethical Hacker (C.E.H.).  Goodman's statements that the Plaintiff is involved in clandestine and covert

illegal conspiracies are in direct opposition to the Code of Ethics and ethical principles of the C.E.H. profession, which forbid participation in anything that would be considered a violation of law. Goodman's non-stop disinformation campaigns continually accuse the Plaintiff of violating a myriad of laws.

### RELIEF REQUESTED

24. To warn the unsuspecting public, the *pro se* Plaintiff seeks a Court order that would require Goodman to display a warning or marking in the description box of all future video podcasts Goodman inserts into interstate communications platforms to include YouTube.com, SubScribeStar.com, Odysee.com, PATREON.com and/or SubStack.com that states the following:

> "The federal court in the Southern District of New York has dismissed the following legal actions with prejudice:
>
> *Goodman v. Bouzy*, 21-CV-10878-AT
>
> *Goodman v. Sharp*, 21-CV-10627-VEC"

25. At such time when *Goodman v. The City of New York*, 23-CV-9648 (JGLC) is dismissed with prejudice, that notation should also be added to the warning or marking in the description box of all future video podcasts distributed.

Sworn under penalties of perjury to be truthful. Signed April 14, 2024 (4/14/2024)

*/s/ D. Swt/*

D. G. SWEIGERT PRO SE PLAINTIFF, C/O
PMB 13339, 514 Americas Way,
Box Elder, SD 57719